[Civil No. 2059.  Filed March 27, 1925.]

[234 Pac. 823.]

A. E. JACOBSON and MATTIE PRINA, as Executrix of the Estate of Z. C. PRINA, Deceased, Appellants, v. LAUREL CANYON MINING COMPANY, a Corporation, C. H. HODGE, J. A. WILLIS, C. O. HANSEN and J. R. STRETCH, Appellees.

1. INJUNCTION—ATTORNEY'S FEES IN PROCURING DISSOLUTION NOT RECOVERABLE AS DAMAGES WHEN NOT SEGREGATED FROM FEES

---

1. Attorney's fees, when allowable as damages, see note in 8 **Am. St. Rep.** 158.

Recovery on injunction bond of attorney's fees necessarily expended in dissolving the injunction, see note in 16 **L. R. A. (N. S.)** 49. See, also, 14 **R. C. L.** 487.

Paid in Defense of Principal Case.—Attorney's fees for procuring dissolution of injunction are recoverable as damages therefor, though when such fees are not segregated from fees paid for general defense of case no recovery can be had.

2. Injunction—Mine Lessees Held Entitled to Recover for Loss of Use of Stream During Wet Season as Damages for Wrongful Injunction.—Where mine lessees contemplated use of stream which flowed by mine only during wet season, but were prevented from such use by wrongful injunction, they were entitled to recover as damages cost of pumping water to operate mine after injunction was dissolved.

3. Injunction—Mine Lessees, Delayed by Wrongful Injunction in Marketing of Their Product, Held Entitled to Recover as Damages Losses from Declining Market.—Lessees, prevented by wrongful injunction from operating mine during wet season of year when near-by stream could have been used and thereby greatly delayed in marketing of their product, *held* entitled to recover, as part of damages, losses from declining market.

4. Damages—Uncertainty as to Fact and not as to Amount of Damages Only Will Preclude Recovery.—Uncertainty, to preclude recovery of damages, must be as to fact of damage and not as to amount.

5. Torts—Proximate Cause of Injury Question for Jury.—What is proximate cause of an injury is ordinarily question for jury.

6. Torts—Wrongful Act Proximate Cause of Injury Which is Natural and Probable Consequence.—To warrant a finding that an act, not amounting to a wanton wrong, is proximate cause of injury, it must appear that injury was natural and probable consequence of wrongful act, and that it ought to have been foreseen in light of attending circumstances.

7. Injunction—Recovery of Damages for Loss of Use of Stream Held not Precluded Because Resulting from Seasons and Circumstances Over Which Wrongdoer Had No Control.—Mine lessees' recovery of loss, resulting from loss of use of stream during wet season, *held* not precluded on theory that it would amount to the enhancing of damages by particular seasons and circumstances over which wrongdoer had no control, anticipations of wrongdoer being important only when exemplary damages are sought.

8 Injunction—Whether Mine Lessees' Losses were Proximate Result of Wrongful Injunction Held Under Evidence for Jury.—Whether mine lessees' losses from deterioration of property from loss of use of stream during wet season, cost of pumping water to replace stream, and losses from declining market

were proximate results of wrongful injunction, *held* under evidence for jury.

9. APPEAL AND ERROR—EVIDENCE—PERMITTING WITNESS WHO HAD TESTIFIED THAT CORRECT ACCOUNTS WERE KEPT TO ESTIMATE VALUE OF MATERIAL AND REPAIRS HELD ERROR, THOUGH HARMLESS IN VIEW OF AMOUNT OF RECOVERY.—In suit for damages for wrongful injunction, it was error to permit witness who had testified that there was a correct account kept of everything to estimate value of material and repairs merely on ground that he could not segregate such items from others, though not prejudicial where damages proved were greatly in excess of judgment recovered.

See (1) 32 C. J., p. 472, § 818; p. 477, § 823.   (2) 32 C. J., p. 467, § 813.   (3) 32 C. J., p. 467, § 813.   (4) 17 C. J., p. 756, § 90.   (5) 38 Cyc. p. 540.   (6) 38 Cyc., p. 443.   (7) 32 C. J., p. 467, § 813.   (8) 32 C. J., p. 467, § 813.   (9) 4 C. J., p. 988, § 2970; 22 C. J., p. 575, § 679 (1926 Anno.).

APPEAL from a judgment of the Superior Court of the County of Graham. Joseph S. Jenckes, Judge. Judgment modified and affirmed.

Mr. George J. Stoneman, for Appellants.

Messrs. Kingan, Campbell & Conner and Mr. L. L. Henry, for Appellees.

SWEENEY, Superior Judge.—This cause was tried in Graham county before a jury on April 25 and 26, 1921. The action is for damages alleged to have been suffered by plaintiffs by reason of an injunction sued out in a certain action in which Richard V. Dey was plaintiff and appellants above named were defendants. The appellees, plaintiffs in the court below, were lessees of Richard V. Dey. They had a written lease which permitted them to enter upon, take possession of, and work certain mines situated in Graham county, known as the Grand Reef mines. A dispute arose wherein Dey claimed that the provisions had been breached, and that he had given notice of forfeiture under the

terms of the lease. A suit was brought to obtain possession of the mines, but the complaint was amended, and the relief sought was to enjoin the lessees from operating the property. On February 2, 1917, an injunction issued enjoining the appellees, their agents, or anyone acting under their direction, during the pendency of the action and until the final determination thereof, from going on or having anything whatever to do with the properties. The appellants became sureties upon the injunction bond, which was conditioned according to law, and is in the sum of $15,000. On March 28, 1917, the injunction was dissolved. This action was tried before a jury who found the issues in favor of the appellees.

The appellees had, when the injunction was issued, been in possession of the mines for a considerable period of time. A large body of ore had been blocked out and put in preparation for mining. The predominant value of the ore was lead, and the market for lead was advancing. There is a stream passing over the mines in which water flows during the wet season. There was a concentrating mill of 200 tons capacity. It was planned to mine and concentrate the stope of ore with the water flowing in the stream. At the time the injunction issued, water had been flowing in this stream for about a week. The appellees had made a contract for oil and were assembling a crew of men to operate the mill in three shifts. It was the intention to mine and mill the ore in the prepared stope and market the concentrates within the period that the water might be expected to flow.

The evidence establishes that this ore could have been mined and milled and concentrated during the period the water was flowing. While the injunction was in force, the launders of the mill dried out, and had to be repaired and rebuilt. The conveyor belt

was ruined, and the mill became generally out of order. Upon the dissolution of the injunction, the lessees returned to the mines and it was late in May before the necessary employees could be secured and the necessary repairs be effected. As soon as possible after the dissolution of the injunction the ore was mined, milled and the concentrates marketed. The price of lead rose during February, March, April and May, the average price being $9.33 per 100 pounds. By the time shipments could be made after the resumption of the operations, the price of lead had dropped, and it is shown in the evidence that the amount realized from the stope of ore was less, by $18,929.41 than would have been realized had not appellees been enjoined.

There were other losses. When the water was not available in the stream, it had to be pumped from the mine, and was only sufficient for one shift per day. The complaint states the cost of pumping to be $40 per day. The evidence showed that cost of pumping water to the mill by the increased price of oil, and the fact that the mill could only be operated one shift per day with the water available, was in excess of $10,000, but the court refused the trial amendment to conform to the proof, and restricted recovery to $40 per day for the actual period the injunction was in force. The jury returned a verdict for $11,500.

The damages claimed by plaintiffs are predicated upon the acts and causes specified as follows: That by reason of the aforesaid injunction the plaintiffs were required to and did expend large sums for attorneys' fees in securing the dissolution thereof, and these plaintiffs were required to and did close down the operation of the said mines and mill thereof, and were required to and did refrain from extracting and shipping ores therefrom, to their great damage

and loss, and that because of the nonuse of said mill the launders thereof dried up, the conveyor belt, because of nonuse, became ruined and useless, the plaintiffs were unable for a long period of time to procure another belt with which to operate said mill; that during the time the said injunction was in force water was running in the stream near said mill, which said water could have been utilized in the operation thereof; that said water ceased to run about the time said injunction was dissolved, and thereafter plaintiffs were required to and did pump water for use in said mill; that during the time said injunction was in force said mill could have been operated with said running water at a saving of $40 per day; that because of the cessation of work at said mines and mill, the skilled employees therein in the service of these plaintiffs left said employment, and these plaintiffs, after the dissolution of said injunction, were required to and did expend large sums of money in procuring other employees, and were caused great and expensive delay in procuring the services of other employees, all to the damage of these plaintiffs in the sum of $15,000.

The first assignment of error to be specifically urged is the allowance for attorneys' fees. Counsel for appellant in his brief submits: "It is the rule in most of the state courts that attorneys' fees are a proper element of damage, provided that expenditures made on this account should have been made for services performed in the dissolution of restraining order"; that is to say, where the injunction is ancillary to the main action, services performed by an attorney in the trial of the main action, after dissolution of injunction, are not to be considered as an element of damage in a suit upon an injunction bond. The appellant's objection appears to be based

on the assumption that these fees are for the trial of the entire case.

Appellant contends that there must be a separation of the fees incurred in securing a dissolution of the injunction from the main case. The original complaint in this case sought possession of the property. The complaint was amended, seeking to enjoin the plaintiffs from operating the property pending the suit. The record clearly shows that the suit in which the injunction was issued was a suit to recover possession of certain mines on account of certain alleged breaches of the terms of the lease by the lessees, and that the injunction was only ancillary, and was procured by Dey for the purpose of preventing the lessees from removing ores pending determination of the question as to whether they had forfeited the lease by failure to live up to its terms.

From the viewpoint that the injunction issued in this case was ancillary to the main action, and the burden being upon the plaintiffs, and no effort being made by them to segregate from the general services performed upon the main issue, that portion of such services which may have been performed in securing a dissolution of the injunction, there is no basis upon which the jury might award to plaintiffs the full sum asked for, $2,000. I believe the rule governing the allowance of attorneys' fees as an element of damage in cases where injunctions are wrongfully sued out, and the one which is applicable to the facts in the case at bar is stated in the footnote to the case of *Littleton* v. *Burgess,* as reported in 16 L. R. A. (N. S.) 52, as follows:

"It is held by Mr. High (Injunctions, § 1685) that, according to the great weight of authority, reasonable counsel fees, incurred in procuring the dissolution of an injunction, are a proper element of damage, the amount being limited to the fees paid for

procuring the dissolution, and not for the general defense of the case.''

The plaintiffs claim $2,000 as reasonable attorneys' fees in connection with the case. Testimony to the effect that this was a reasonable sum for the services rendered was admitted by the court, and the court instructed the jury that they might include a reasonable attorney's fee in their verdict. No place in the testimony of the witness was it shown that the services rendered by the attorneys were for securing the dissolution of the injunction; but it does appear that the $2,000 attorneys' fees is charged for all of the services in connection with the litigation. For the reason that the attorneys' fees were not segregated, showing what portion was applicable to securing the dissolution of the injunction, and what portion was applicable to the defense of the main case, I am of the opinion that the court should not have permitted the jury to include any amount for attorneys' fees in their verdict. The damages proved in the case were much in excess of the judgment recovered, and the judgment as rendered by the trial court should be modified by deducting therefrom the sum of $2,000, the amount the jury were permitted to consider as attorneys' fees in arriving at their verdict, and as so modified should be affirmed.

General Damage Based upon Fact That Plaintiffs Refrained from Extracting and Shipping Ores from Mine and Mill—Alleged Nonuse of Mill.

If the water which flowed in the stream during the wet season and while the injunction was in force could have been used to mill the stope of ore which had been prepared for mining and milling, the ore could have been worked out and the concentrates sold during the period the injunction was in force. The appellees were entitled to operate the mine and mill during this period. They were prevented

from doing so. They lost the use of this water to which they were undoubtedly entitled. When they resumed work after the dissolution of the injunction water had to be pumped from the mine, and then there was only sufficient water to run one shift per day. It is alleged in the complaint that it cost $40 a day to pump this water. The proof showed that because of the advance in the price of oil it cost $10,000 to pump the water necessary to mill the stope of ore. The appellees asked the court to permit them to amend to conform to the proof, but this the court refused upon objection of appellants. They were limited to the $40 a day, for the time the injunction was in force. Counsel for appellant contends that there is no proof that water was running in the stream during the period the injunction was in force.

There is abundance of evidence upon the question of water to sustain the verdict as shown by the testimony of the witnesses L. E. Wightman, C. H. Hodge and G. A. Rhoades. The evidence is not contradicted, and the question was squarely presented to the jury, who found the issues in favor of the appellees.

There is a larger question of the loss sustained as alleged in the complaint, because of the injunction which compelled appellees to refrain from extracting and shipping ores, to their great damage and loss. The proof is that during the period the injunction was in force, with the use of water flowing in the stream, the prepared stope of ore could have been mined and milled and the concentrates sold, and that for such concentrates appellees would have received the sum of $18,929.41 more than they actually did receive, although they promptly resumed operations and mined, milled and marketed the concentrates as speedily as possible after the injunction was dissolved. This was because the price of the metal

had declined, and represents the difference between the market price as it existed during the period the injunction was in force and the market price which existed at the time they were permitted to mine and mill the same stope of ore.

Appellants object to any allowance for this loss, contending that the appellees can recover only such profits as they have lost, and since the evidence does not disclose what profit would have been made had they not been enjoined, no recovery at all can be had. In the case at bar the appellees had a right, under their lease, to work the mine and mill for use and profit, and the appellant was morally and legally bound to do no wanton injury to their rights. In an action "for a wrongful injunction against the working of a coal mine by lessees, they are entitled to recover on the bond such damages as were the direct and proximate result of the service of the writ." *Silka* v. *Quinn,* 46 Colo. 596, 105 Pac. 1104.

The appellees having a right to remove the ore under the most favorable circumstances, and intending to do so, were wrongfully prevented. Hoping for and expecting a profit to result from the working of the mine after the injunction was dissolved, they, as promptly as possible, mined and milled the stope of ore. The principles of law and equity require, where they received for their ore less than they would have received had they not been interfered with by the injunction, they should be entitled to recover that loss. Under the particular facts of the case at bar, it would be a miscarriage of justice to hold that loss sustained by reason of depreciation in the value of the ore could not be recovered. "When delay in the sale of personal property is caused by an injunction, and the depreciation in the salable value of the property is an incident of the delay, the loss, within the meaning of the Statute

. . . is held to be 'occasioned' by the injunction and the depreciation is the measure of damages.'' *Meysenburg* v. *Schlieper et al.,* 48 Mo. 426.

The appellees, according to the undisputed evidence, are out of pocket $18,929.41 more than they would have been out of pocket had they not been enjoined. Whether this amount would have cut down the profits in that amount, or whether it augmented the loss, is, under the facts of this case, immaterial. All of the authorities, of course, agree that the victim of a wrongful injunction is entitled to recover the damages occasioned by the injunction. Where there is an undisputed showing of an actual damage it involves no element of speculation. The damage can be figured to a cent—the difference in the market value which appellees could have received and which they were entitled to receive for the concentrates, and the amount which they actually did receive. The certainty required by the law refers not solely to the amount of damages but also to the question whether they will result at all from the breach of contract or from the tort. It is now generally held that the uncertainty referred to is the uncertainty as to the fact of the damage and not as to its amount, and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery. 8 R. C. L. 441, 442.

Now, in this case, it is certain that the appellees have sustained loss as the proximate or natural consequence of the wrongful injunction, and the events which occurred after the wrong complained of serve to render the damages sufficiently certain. It appears that loss actually occurred by reason of the wrongful injunction. It will be observed that there was a change in the market value of lead—the metal content of the ores—of such a character that the ap-

pellees, when they became able, by reason of the dissolution of the injunction and by repairing their mill, to market the ores and concentrates which they were prevented from marketing during the stoppage caused · by the wrongful injunction, could not and did not obtain as high a price for their concentrates as they would have obtained had they been marketed during the period the injunction was in force, and the difference in the price would be a loss which the appellees are entitled to recover as damages by reason of suing out of a wrongful injunction by the appellant.

"Between the times a pipe-line for conducting oil to market was torn up and reconstructed, the owner was prevented from marketing oil of a certain value, . . . but if during the interruption the market value of oil depreciated . . . and this could be shown, such damages could be recovered." *Brookshire Oil Co.* v. *Casmalia Branch Oil & Development Co.,* 156 Cal. 219, 103 Pac. 927.

"In estimating damages sustained by the improper issuing of an injunction, the courts proceed upon equitable grounds, and while it is difficult to fix any precise rule or standard for determining the damages upon dissolution, it may be said generally that nothing will be allowed which is not the actual, natural and proximate result of the wrong committed." High on Injunctions, § 1663.

In view of the foregoing rule, can it reasonably be said that the damages claimed would be the natural and proximate consequences of the issuance of the injunction? The suggestion presents the oft embarrassing question: What is and what is not the proximate cause of an injury? The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact in view of all the circumstances of fact attending it. The primary cause may be

the proximate cause of the disaster thereof. It may operate through successive instruments, as an article at the end of a chain may be removed by force applied to the other end, that force being the proximate cause of the movement. The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application, but it is generally held that, in order to warrant a finding an act not amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the wrongful act, and that it ought to have been foreseen in the light of attending circumstances.

I think the appellants might well have anticipated or regarded the probable consequence of the wrongful injunction in this case as much more far-reaching than would have been natural or probable in other circumstances. They were experienced mining men, and knew, or should have known, the value of the water in the stream for the particular use to which it was to be applied in the operation of the mill. They knew, or should have known from their experience, that ores are extracted and milled and the concentrates shipped to market during the high market value of the metal content of the ores extracted. They were certainly chargeable with the knowledge that if the injunction was granted restraining the appellees from going on or about the premises that deterioration would be a necessary consequence. It was known to them that the water in the stream did not run continuously throughout the year, but only during the wet season; that it

would not remain there permanently, and that the injunction would necessarily deprive the appellees of the use of free water to operate their mill, to which they were entitled.

It may be said, however, that this is permitting the damages to be enhanced by particular seasons and circumstances over which the wrongdoer, the appellant, had no control, to which he in no way contributed and could not have anticipated. What the anticipations of the wrongdoer may be is important only when exemplary damages are demanded. The law measures the damages in other cases regardless of intentions, but why should not especially favorable or unfavorable seasons be considered in this class of torts? In the ordinary case of breach of contract the contractor may show that the season turned out a favorable one, and the effect thereof upon the profits he would have made. Why should not the favorable or unfavorable season (water running in the stream) enter into the question? All look to the favorable times and seasons to make their profits and to recover back the losses they sustain during the unfavorable ones, and it is not for the wrongdoer to say they shall not.

In cases such as the one at bar, the resort of the sufferer must be to the originator of the cause, and, there being no intermediate efficient cause, the original wrong must be considered as reaching to the effect and proximate to it. The inquiry, therefore, must always be whether there was an intermediate cause disconnected from the primary fault, and the operating cause which produced the injury. The primary fault was the wrongful injunction. It restrained the appellees from doing anything whatsoever to preserve and protect their property. They were prevented from going upon the premises, and for that reason were precluded from protecting the

launders, which dried up. They were precluded from taking steps to preserve the conveyor belt, and, as a direct result of this exclusion from the premises, the belt rotted; the tables warped and the mill became generally out of order. They were enjoined and restrained from extracting the ores from the mines and operating the mill. By reason of that restraint, they could not use the water in the stream, which was running in sufficient quantity for mill purposes. By reason of the loss of the water when they resumed operations they were required to and did pump water from the mine shaft with the result—increased cost of fuel for the use of the pump. By reason of not having the use of free water to operate three shifts per day, only sufficient water was available from the shaft in the mine to operate one shift per day. They were necessarily delayed in concentrating and marketing their ores, with the result of a loss of a favorable market, and, as the result of the loss of the favorable market, there was a depreciation in the value of the metal content of the ore, lead, from the average price of $9.33 per 100 pounds, at which price it remained during the period of the injunction, to a price ranging from $5 to $6 per 100 pounds when the ore was finally marketed, with the resulting depreciation in the value of their commodity.

In the nature of things there is in every transaction a succession of events more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events, or facts, and ascertain whether they are naturally and properly connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time.

I am of the opinion that the court was correct in
submitting to the jury whether this succession of
facts was a result naturally and reasonably to be
expected under the circumstances and whether it was
the result of a continuous influence or the effect of the
primary fault of securing the issuance of a wrong-
ful injunction without aid or concurrence of other
causes.   The jury found in substance that the injury
complained of in the complaint was the proximate
and natural consequence occasioned by the wrongful
injunction, and this in effect was finding that there
was no intervening or independent cause between the
conduct of the defendants and the injury to the
plaintiff, and as the question of proximate cause is
one of fact to be determined by the jury, and as the
evidence of damage is wholly uncontradicted in the
record, I am of the opinion that the finding of the
jury in this matter should not be disturbed.

It is insisted by the appellant that the trial court
erred in permitting the plaintiff, over objection, to
prove by its witness Hodge the estimated value of
material and repairs of launders, when it appeared
that:

"There was a correct account kept of everything
that was done out there. We have the books and
everything, I know."

Upon the books being produced, the witness found
that the work and material expended on the launders
was not kept separate from the other expenses, and
that he was unable to segregate them. The state-
ment of the witness imports that a correct account
of such costs was kept, and the only reason for
offering an estimate of such costs was the inability
of the witness, Hodge, to segregate them. I think
this was the misfortune of the plaintiffs. They
should have been prepared to segregate the items.
I am of the opinion that when they admit they have

27 Ariz.—36

present the exact costs, they ought not to be permitted to estimate these costs simply because the witness was unable to pick out the particular items from ,some others. With reference to this item I think it may be well stated that, even though the competency of the evidence may be questioned, the damages proved were much in excess of the judgment recovered, and therefore the error, if one, was harmless.

For all of the foregoing reasons, it is ordered that the judgment of the trial court be modified by striking therefrom the sum of $2,000, and the judgment, as so modified, be affirmed.

ROSS and LOCKWOOD, JJ., concur.