[Civil No. 2851. Filed December 16, 1929.]

[282 Pac. 937.]

THE ROOSEVELT IRRIGATION DISTRICT, a Corporation, Appellant, v. BEARDSLEY LAND AND INVESTMENT COMPANY, a Corporation, and MARICOPA COUNTY MUNICIPAL WATER CONSERVATION DISTRICT No. 1, a Corporation, Appellees.

Messrs. Armstrong, Lewis & Kramer, for Appellant.

Messrs. Hayes, Stanford, Walton, Allee & Williams, for Appellees.

McALISTER, J.—This is an appeal by the Roosevelt Irrigation District from a judgment for the defendants, Beardsley Land and Investment Company and Maricopa County Municipal Water Conservation District No. 1, entered upon the refusal of the plaintiff to amend further after a general demurrer to its first amended complaint had been sustained.

It appears from this complaint that in 1927 the defendants, for the purpose of conveying water to and applying it upon a large acreage of land located in Maricopa county, Arizona, particularly upon townships 2 and 3 north, range 2 west, constructed and are now maintaining an irrigation canal from the northeast portion of said township 3 in a southerly direction to the southerly part of said township 2; that these two townships lie upon a comparatively level plain a few miles east of what is commonly known as the White Tank Mountains, the easterly watershed of which has from time immemorial drained eastward through natural washes, gorges and arroyos down across the lands of these two town-

ships, and that prior to the happening of the things herein complained of no part of the drainage from this area has ever run anywhere except through these natural waterways or spread itself out over and dissipated itself upon the lands which the defendants are attempting to reclaim and irrigate; that just west of this irrigation canal and paralleling it the full length of said townships 2 and 3, a distance of twelve miles, the defendants have also constructed dams and canals in such a manner as to constitute a drainage canal averaging six feet in depth and eleven feet in width; that said drainage canal has been so intentionally constructed as to collect and gather the whole of the surface waters flowing from the easterly watershed of the White Tank Mountains from their natural watercourses throughout the entire length of said canal and cause them to flow southerly through the same and be discharged by it at the mouth thereof, on the south side of section 33 in said township 2, a direction in which no part of said water has ever flowed before.

It further appears from the amended complaint that for the purpose of reclaiming a large acreage in Maricopa county lying southerly and westerly from said townships 2 and 3, the plaintiff, subsequently to October, 1927, constructed an irrigation canal with a general east to west course which enters said township 2 at the southeast corner of section 36 thereof and continues from there in a soutwesterly direction across township 1 north, range 2 west; that it passes only a short distance south of the mouth of the defendants' drainage canal, and that the latter throws against it and the lands served by it all the surface waters from the easterly watershed of the White Tank Mountains, an area so great and subject to such rainfalls that the volume of surface water collected in said drainage canal and discharged against plaintiff's canal and the lands thereunder is very much

larger than the latter was built to handle, though its culverts, openings and gates are of sufficient capacity to care for and dispose of all the surface waters that may flow into it naturally from its own watershed above without damaging the lands of plaintiff or anyone else.

It further appears that plaintiff's canal is the only means by which water for irrigation may be furnished to many thousand acres planted to growing crops lying south and west of the point where the said surface waters are thrown against it, and should the usual rainfalls occur in the above watershed this canal and the lands it serves will be damaged and probably destroyed, and due to a failure to supply the necessary irrigation water, such injury will result in a total loss to the owners of the crops growing upon said lands; that about the 25th of August, 1928, a usual rainfall did occur in the watershed aforesaid and the surface water draining therefrom was stopped and collected by the dams and drainage ditch of the defendants and conducted thereby a distance of twelve miles and cast upon the irrigation canal, laterals and ditches of the plaintiff, with the result that it washed out and destroyed the canal in over twenty places and also the laterals at many points, and damaged the plaintiff in the sum of over $5,000; that plaintiff has no adequate remedy at law, and unless the court in the exercise of its equitable jurisdiction directs the defendants to take care of these surface waters in one of the several ways it names as suitable for the purpose or in one of their own not mentioned, or requires them to remove the obstructions placed in the said washes, gullies and arroyos and allow the said waters to flow in their original channels, the plaintiff is entirely without remedy, because the injury which may result from these wrongful acts is such that they would not be able to respond in damages therefor.

The only errors assigned are that the court erred in sustaining the general demurrer to the first amended complaint and in entering judgment for the defendants upon the plaintiff's refusal to amend. The sole question raised by these assignments is the right of defendants to protect their irrigation canal and lands from the surface waters of the easterly watershed of the White Tank Mountains in the manner above set forth. If they were justified in turning the surface water draining easterly from this large area of country in a southerly direction and discharging it upon the premises of plaintiff in large quantities, the demurrer was properly sustained, otherwise not.

The water in question drains through washes, gullies and arroyos, and is therefore merely surface water, the law of which governs the parties hereto in protecting their premises from it. There are two distinct doctrines relating to such water—the rule of the civil and that of the common law. The courts of many of the states have adopted the former, and where this is true the lower premises are subservient to the higher, the latter having a qualified easement in the former which carries with it the right to discharge all surface water thereon. The common-law doctrine, upon the other hand, has been accepted by the courts of a number of the states, and where it prevails the lower owes no duty to the higher estate relative to surface water, because it is regarded as a common enemy against which anyone may defend, even to the extent of causing injury to another in doing so. Damage resulting from such acts is *damnum absque injuria*. *Walker* v. *New Mexico & S. P. R. Co.*, 165 U. S. 593, 41 L. Ed. 837, 17 Sup. Ct. Rep. 421, 424; *Cass* v. *Dicks*, 14 Wash. 75, 53 Am. St. Rep. 859, 44 Pac. 113; *Gibbs* v. *Williams*, 25 Kan. 214, 37 Am. Rep. 241; *Borchsenius* v. *Chicago, St. P., M. & O. Ry. Co.*, 96 Wis. 448, 71 N. W. 884.

In the first of these cases the Supreme Court of the United States, after calling attention to the difference between the civil and the common-law rules on the subject and to the fact that some of the states accept the one and some the other, says concerning the latter:

"The doctrine of the common law, on the other hand is the reverse,—that the lower landowner owes no duty to the upper landowner; that each may appropriate all the surface water that falls upon his own premises; and that the one is under no obligation to receive from the other the flow of any surface water, but may, in the ordinary prosecution of his business, and in the improvement of his premises, by embankments or otherwise, prevent any portion of the surface water coming from such upper premises."

The defendants constructed their dams and drainage canal upon the theory that the rule of the common law prevails in this state, that under it no obligation rested upon them to permit the surface water from the easterly slope of the White Tank Mountains to run on to or over their premises, and therefore that they were within their rights in building an embankment and drain to prevent it from doing so. The common law, it is true, has been adopted in this state but in a greatly restricted sense. A reading of paragraph 5555, Revised Statutes of Arizona (Civil Code) 1913, dealing with this subject, discloses that it has been made the rule by which the courts shall be governed in their decisions when "it is consistent with, and adapted to the natural and physical conditions of this state, and the necessities of the people thereof, and not repugnant to, or inconsistent with, the Constitution of the United States, or the Constitution or laws of this state, or established customs of the people." Clearly this language makes it imperative upon the courts to modify or disregard it when it is not

adapted to our conditions, necessities or established customs, and the rule of that law—that one may adopt any means he may choose to prevent surface waters from coming on his premises without regard to the injury it may cause others—has been modified by many of the states which accept it by requiring that one protect his own premises from surface water in such a way as not to injure another unnecessarily or unreasonably. *Sheehan* v. *Flynn,* 59 Minn. 436, 26 L. R. A. 632, 61 N. W. 462, and the cases cited in the annotation to *Mizell* v. *McGowan* in 85 Am. St. Rep. 705. And while in *Gibson* v. *Duncan,* 17 Ariz. 329, 152 Pac. 856, this court called attention to the fact that in *City of Tucson* v. *Dunseath,* 15 Ariz. 355, 139 Pac. 177, it had quoted approvingly the last eight lines of the above excerpt from *Walker* v. *New Mexico & S. P. R. Co., supra,* it also approved a quotation from *Sheehan* v. *Flynn, supra,* which contained three separate statements of the common-law rule as modified.

However, it is immaterial in this case whether the common-law rule in its original form or as modified prevails in this jurisdiction, for under the authorities, those that follow the common as well as those that accept the civil law, "the rule is universally recognized," to use the language of the annotation to *Mizell* v. *McGowan, supra,* at page 730 of 85 Am. St. Rep., "that a land owner has no right to collect surface water in an artificial channel, and discharge it in large quantities upon the land of a lower owner to his damage." Numerous authorities are cited in support of this proposition, and in *Kroeger* v. *Twin Buttes R. R. Co.,* 14 Ariz. 269, Ann. Cas. 1914A 1289, 127 Pac. 735, this exact language of the annotator was used by this court. See, also, *Paddock* v. *Somes,* 102 Mo. 226, 10 L. R. A. 254, 14 S. W. 746; *Humphreys* v. *Moulton,* 1 Cal. App. 257, 81 Pac. 1085; *Finkbinder* v. *Ernst,* 126 Mich. 565, 85 N. W. 1127; *Southern Ry.*

Co. v. *Lewis,* 165 Ala. 555, 138 Am. St. Rep. 77, 51 South. 746; *Stinson* v. *Fishel,* 93 Iowa 656, 61 N. W. 1063; *Elser* v. *Village of Gross Point et al.,* 223 Ill. 230, 114 Am. St. Rep. 326, 79 N. E. 27; 40 Cyc. 647, Sec. c, and cases cited. The statement in *Illinois Cent. R. Co.* v. *Miller,* 68 Miss. 760, 10 South. 61, 62, that "neither under the rule of the civil nor of the common law is one permitted to collect surface water falling upon his own land or that of another in artificial channels, and to discharge it in undue and unnatural quantities upon the land of another," is particularly applicable here in view of the following facts which led the court to announce it:

"The defendant has, for the protection of its road-bed, dug a ditch along its eastern line, into which is collected surface water falling upon adjacent lands for a half mile along the ditch, and which, but for the ditch, would have flowed upon lands of other persons, and has discharged the water thus accumulated upon the lands of the plaintiff, which were free from the flow of the water in its natural course. Upon all the authorities this is an unlawful act, and for it the plaintiff is entitled to recover."

Since, therefore, it appears from the amended complaint that the effect of the dams and drainage canal of the defendants is to collect the surface water drained from the easterly slope of the White Tank Mountains through the washes, gullies, and arroyos of an area of country twelve miles in width, carry it in a southerly direction and discharge it against plaintiff's canal and the lands under it, or so near thereto that the result is the same; that none of the water thus collected and discharged had ever flowed in that direction prior to the construction of the defendants' dams and drainage canal; that the volume of water that runs into said drainage canal from this extensive area of country after any ordinarily heavy rain is so large that to discharge it at the

mouth thereof against the canal of plaintiff and the lands under it will produce a serious injury thereto; and that the condition created by the building of the aforesaid dams and drainage canal constantly threatens serious injury to plaintiff, we are clearly of the view that it states a cause of action and that the general demurrer to it should have been overruled. Even though it be true that defendants could have thrown up an embankment and prevented the water from flowing on their premises, this did not authorize them to collect it in an artificial channel and cast it against plaintiff's property, for "there is a manifest distinction between casting water upon another's land, and preventing the flow of surface water upon your own." *Barkley* v. *Wilcox*, 86 N. Y. 140, 40 Am. Rep. 519.

Several methods for taking care of the water in question without removing the dams and drainage canal are set forth in the amended complaint, but it is unnecessary to consider them, since the allegations relative thereto are taken as true for the purposes of the demurrer and their sufficiency is unchallenged. While these methods are pointed out as proper, the complaint does not proceed upon the theory that plaintiff's right to protection from the water as discharged depends upon the feasibility of them or of any other plan for handling it; yet the rights of the defendants as well as the building up of the country and the interest of good husbandry demand that one of them be followed if feasible and that the obstruction to the water's natural flow upon their premises be allowed to remain unless its removal is absolutely essential to plaintiff's protection.

The defendants suggest that the fact that their drainage canal was built a short while prior to plaintiff's irrigation canal is a factor to be considered in the case, but they pursue the matter no further than to make the suggestion. It is clear that it is without

74

merit because the land served by plaintiff's canal is susceptible of reclamation by the construction of proper irrigation works and the defendants must be held to have had this in mind when they constructed their drainage canal. Their only right to discharge the water in question on it in the manner described, if objected to by the interested parties, would necessarily exist, if at all, as a result of an easement either purchased or gained by prescription, and this would be a matter of defense.

The judgment is reversed and the case remanded, with direction to the lower court to overrule the general demurrer to the amended complaint.

LOCKWOOD, C. J., and ROSS, J., concur.