[Civil No. 3047. Filed January 12, 1932.]

[6 Pac. (2d) 898.]

MARICOPA COUNTY MUNICIPAL WATER CON-SERVATION DISTRICT NUMBER ONE, a Corporation, Appellant, v. ROOSEVELT IRRI-GATION DISTRICT, a Corporation, Appellee.

Messrs. Hayes, Stanford, Walton, Allee & Williams, for Appellant.

Messrs. Armstrong, Kramer, Morrison & Roche, for Appellee.

LOCKWOOD, J.—Roosevelt Irrigation District, a corporation, hereinafter called plaintiff, brought suit against Maricopa County Municipal Water Conservation District No. 1, a corporation, hereinafter called

defendant, to recover for damages which plaintiff alleged were caused to its irrigation canal by reason of a large quantity of water which it claimed defendant had diverted from its natural course and collected and cast upon the canal of plaintiff. A general demurrer to the complaint was sustained, and, plaintiff refusing to amend further, judgment was rendered in favor of defendant. From this judgment an appeal was taken to this court, and we reversed the judgment with instructions to overrule the general demurrer, holding that the complaint stated a cause of action. The case was then tried to a jury, which returned a verdict in favor of plaintiff in the sum of $1,500, and, after judgment and the usual motion for new trial, this appeal was taken.

The first question before us is one of procedure. It is urged by plaintiff that the motion for new trial was prematurely filed, and therefore, under the provisions of section 3660, Revised Code of 1928, we cannot consider the sufficiency of the evidence. The matter turns upon when the judgment was "rendered." We have held previously that the true judgment is the oral judgment pronounced by the judge from the bench, as recorded in the minutes, instead of the formal written judgment which is usually and properly signed by the trial judge and filed at or after the time of rendition of judgment. *Kinsley* v. *New Vulture Min. Co.*, 11 Ariz. 66, 90 Pac. 438, 110 Pac. 1135; *Moulton* v. *Smith*, 23 Ariz. 319, 203 Pac. 562. It appears from the record herein that the verdict was returned on May 28, 1930. On August 4, 1930, the following minute entry appears:

"Comes now the Plaintiff by its Counsel, G. W. Shute. Thereupon, it is ordered by the Court for Judgment on the verdict."

Standing alone, the minute entry is undoubtedly ambiguous; it does not state whether the court "rendered" judgment, or merely ordered that upon the

doing of some further act it would then "render" judgment. However, the record also shows that counsel for plaintiff formally moved for judgment on the verdict on July 31st. In view of these circumstances, and the fact that no objection was made in the lower court to the motion for new trial filed August 12th on the ground that it was premature, we think plaintiff is estopped from contending the minute entry does not show an actual rendition of judgment on August 4th, in which case the motion for new trial was not premature, and we may consider the question of the sufficiency of the evidence.

Some years since, in the case of *Moulton* v. *Smith, supra,* we referred to the unfortunate practice of many superior courts of the state in so conducting their proceedings as to confuse counsel as to the date upon which judgment was actually rendered, and referred with approval to and explained at length the custom then and since followed in the superior court of Cochise county to prevent such misunderstanding. Since that time about half of the superior courts of this state have adopted some such practice; the remaining ones have apparently ignored it. As a result, there is hardly a term of this court at which some case is not presented where the result is more or less affected by the failure of the trial court to observe our suggestion in this respect. We again urge upon the trial judges that they follow some system whereby the rendition of judgment and the filing of the formal written judgment will be synchronous. We proceed, then, to consider the merits of the appeal.

There are some nine formal assignments of error, but we think it will simplify and clarify the case if we first state the general rule of law fundamental in actions of this nature, and then apply the standard as laid down to the facts as they are shown by the record

It appears from the briefs of counsel for defendant that we failed to make clear to them the principle of law which we stated on the previous appeal of this case. This rule we repeat as follows: A land owner has no right to collect surface water in an artificial channel, and discharge it in large quantities upon the land of a lower owner to his damage. See *Roosevelt Irr. Dist.* v. *Beardsley Land & Invest. Co.*, 36 Ariz. 65, 282 Pac. 937. It makes no difference whether these surface waters arose originally upon the land of the party who collects them, or upon the lands of another. Neither is it material that such collection was for the purpose of protecting the land of the person who so collects them, or whether the damage done to the lower owner is greater or less than that which would result to the collector if he did not protect his own lands. While, as we indicated in the previous opinion, the trial court in determining whether immediate injunctive relief should be allowed may consider the effect on defendant, the general welfare of the country and the interests of good husbandry, yet if, after all other methods of avoiding repeated damage from the collected waters have been exhausted, it appears that the only way to prevent it is to restore such surface waters to their original unobstructed natural channels, such course must be followed. *MacDonald* v. *Perry,* 32 Ariz. 39, 255 Pac. 494. This is the fundamental principle which we laid down on the previous appeal, and upon its proper application depend the respective rights of plaintiff and defendant. Such being the law, the first question of fact for us to determine is whether or not defendant did violate this rule. In passing upon the facts, under our invariable rule we are bound to take such view of them, if there be a conflict therein, as will sustain the verdict and judgment. So taken, these facts may be stated as follows:

Defendant in the year 1927, for the purpose of irrigating a large acreage of land lying a short distance to the east of the White Tank Mountains in Maricopa county, constructed an irrigation canal which for several miles runs in a general southerly direction along the base of said mountains, at a distance of some one and one-half to three miles therefrom, ending near the southern extremity of the mountains. The terrain between the canal and the mountains varies from smooth to rough and hilly, and is traversed by many washes, arroyos and gulleys. These mountains are subject at intervals to rains which at times are very heavy. The water falling upon their eastern slope naturally flows down the side toward the east, collecting in the various depressions on the surface, crosses the line where defendant's canal now runs, and spreads out in great quantities over a more or less flat alluvial plain lying between the mountains and the Agua Fria River. Much of this water sinks into this flat plain; some of it collects in arroyos and gulleys and reaches the Agua Fria River to the east, but a considerable quantity is collected through various depressions, and runs into what is known as the ''Avondale wash,'' an arroyo which eventually empties into the Gila River to the south, while some portion thereof collects in a smaller arroyo, known as the ''Perryville wash,'' at some distance to the west of the Avondale wash, above referred to, and also finally reaches the Gila River.

After the construction of defendant's canal as aforesaid, it built the various laterals necessarily appurtenant thereto, and commenced the irrigation of the lands lying immediately to the east of the canal. In order to protect the canal, laterals and irrigated land from the waters above described, it built, at a short distance west of its main canal and parallel thereto, what has been called a drain ditch or dyke, extending a distance of some twelve miles. It was

constructed by throwing up a large embankment along the west side of the canal, and, in places where it was necessary to do so, excavating on the west side of such embankment. The result of the embankment is to stop and collect the bulk of waters flowing down the eastern slope of the White Tank Mountains as aforesaid, and to divert their natural course so that they would all flow south along the line of said embankment, and eventually empty themselves in one place at the end of defendant's canal, instead of following their natural course as above described. There is and can be no doubt, not only that this was the effect of defendant's dyke or drain ditch, but that it was built for that express purpose, and none other. The slope of land to the west of defendant's canal, together with the area of the run-off and character of the rains, made it obviously impossible to collect and hold permanently, immediately to the west of the canal, any appreciable amount of water. Unless defendant opened a way for the waters to escape along its dyke to the south, they would inevitably break over the top of the dyke and canal, and again pursue their natural course.

The Roosevelt Irrigation District, plaintiff herein, contains about 35,000 acres of land suited for general agricultural purposes, such as cotton and alfalfa, beginning at the Agua Fria River, and extending in a westerly direction to the Hassayampa River. The relative position of the lands of the two districts may be compared to a large T, the handle pointed to the north, and the head running in an east and west direction. The handle represents the lands of defendant, and along the western side of such handle runs defendant's canal. The head of the T represents the land of plaintiffs, and along the north edge of the head, substantially at right angles to defendant's canal, runs the canal irrigating the lands of plaintiff. The Avondale wash, above referred to,

crosses the canal of plaintiff below the lands of defendant. The Perryville wash crosses the canal of plaintiff above such lands, and close to the end of defendant's canal, where the waters aforesaid were collected and discharged.

It will be seen from this explanation that the effect of defendant's dyke was to collect all of the flood waters flowing eastward from the White Tank Mountains which formerly either (a) were absorbed by the flat country in and east of defendant's land, (b) flowed through gulleys into the Agua Fria River to the east, (c) flowed into the Gila River to the south through the Avondale wash, and (d) flowed into the Gila River to the south through the Perryville wash, and to discharge most of them into the Perryville wash.

Under the rule of law above laid down, defendant had no right to do this, and is responsible to plaintiff for any damages caused to the latter as a result of such collection and discharge of the waters. It is immaterial that prior to the erection of defendant's dyke the greater portion of such flood waters crossed at various different points the line where plaintiff's canal was subsequently built. If by the change and concentration of the waters aforesaid an increased burden was thrown on plaintiff, defendant is liable therefor. Taking the foregoing statement of the law and facts as the standard, let us consider the specific assignments of error.

The first is that the court refused to instruct the jury to return a verdict for defendant. The assignment is obviously without merit.

The second, third and fourth assignments are objections to certain instructions given to the jury. It is not necessary to quote these instructions in full. They are clearly in accordance with the law as laid down by us, both in this and the previous appeal of this case.

The fifth and sixth assignments are based on the refusal of the court to give certain instructions asked by defendant. These instructions obviously were based on the theory that the test of defendant's right to maintain its dyke was whether it was reasonably necessary to protect its own lands from injury. As we have stated, this is not the law.

The seventh, eighth and ninth assignments go to the refusal of the court to give certain instructions requested by defendant. These instructions again were based on the erroneous theory that it was the duty of plaintiff to protect itself against the result of defendant's conduct, instead of the duty of defendant to refrain from injuring plaintiff. This again, as we have stated, is not the law.

The tenth assignment is merely the general one that the verdict and judgment are not justified by the evidence, and are contrary to law. The principle argument on this point, in addition to the matters we have already passed upon, is that there was not sufficient evidence from which the jury could determine the amount of damages caused by defendant's actions. It appears from the evidence that plaintiff's canal was washed out at a large number of places. The record shows fully the size, location and description of the various breaks, and the amount of money it cost to repair them. The undisputed testimony is that the total cost of repairs was far greater than the amount of the verdict. It is evident, then, that the jury found that some of the breaks were the result of defendant's conduct, and some were not. The true rule in regard to damages in a case of this nature may be well stated as follows:

"It is evident that the damages recoverable are nearly always involved in some uncertainty and contingency, and, therefore, it is a rule that reasonable certainty only is required. Formerly the tendency was to restrict the recovery to such matters as were

susceptible of having attached to them an exact pecuniary value, but it is now generally held that the uncertainty referred to is uncertainty as to the fact of the damage and not as to its amount, and that, where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery. This is particularly true where, from the nature of the case, the extent of the injury and the amount of damage is not capable of exact and accurate proof. There are many cases where the extent of the injury cannot be ascertained immediately thereafter and where evidence is permitted to be given to show the probable extent thereof, and a recovery allowed on that basis." 8 R. C. L., pp. 441, 442.

We think the evidence brings the verdict well within this rule.

It may not be amiss for us to refer to another matter, not essential to the determination of the case at bar, but which may be of value as preventing further litigation. It appears from the record that it is almost certain at some and perhaps at many times in the future, if the *status quo* is maintained, plaintiff will again be compelled to bring an action for damages against defendant for a recurrence of the conditions out of which this action arose. It would appear to us, both from the record and the argument of counsel at the oral hearing, that there is one comparatively simple and certain method whereby the property of both plaintiff and defendant might be protected from future damage.

The waters collected by defendant and discharged at the end of its canal eventually find their way almost entirely into the Perryville wash, and a proper continuation of the drainage ditch would undoubtedly discharge all of the flood waters in question through that wash. If, then, those waters were carried under plaintiff's canal by proper substructure, and down the natural course of the Perryville wash to

the Gila River, both plaintiff and defendant would be permanently and completely protected from damage. The only objection thereto would appear to be the cost, for the law allows the condemnation of a right of way for such drainage if it be necessary. If such condemnation covers any of the property owned by plaintiff, the trial court would doubtless take into consideration the benefit, if any, to plaintiff of such action. It may be that other better methods of handling the situation are available, and of course we do not intend to limit the parties in their freedom of action. Unless, however, something is done to take care of these flood waters, the matter will doubtless be finally terminated by injunctive relief instead of damage suits.

There being no material error appearing in the record, the judgment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.