515 P.2d 860

Mark **READER** and Frances Reader, his wife, Albert Mayer and Jean Mayer, his wife, on behalf of themselves and all others similarly situated, Appellants,

v.

**MAGMA-SUPERIOR COPPER COMPANY,** an Arizona corporation, Inspiration Consolidated Copper Company, a Maine corporation, Ray Mines Division, Kennecott Copper Corporation, a New York corporation, American Smelting and Refining Company, a New Jersey corporation, Phelps Dodge Corporation and Magma Copper Company, Appellees.

No. 10414-PR.

Supreme Court of Arizona,
En Banc.

Nov. 6, 1973.

Rehearing Denied Dec. 4, 1973.

Marks & Marks by Richard B. Wilks, Langerman, Begam & Lewis, P.A., by Robert G. Begam, Kenneth L. Abrams, Phoenix, for appellants.

Evans, Kitchel & Jenckes, P.C., by Earl H. Carroll and Harold J. Bliss, Jr., Phoenix, for appellees American Smelting & Refining Co. and Phelps Dodge Corp.

Fennemore, Craig, von Ammon & Udall by Philip E. von Ammon, Phoenix, for appellee Kennecott Copper Corp.

Twitty, Sievwright & Mills by Howard A. Twitty, Phoenix, for appellee Magma Copper Co.

G. Henry Ladendorff, Phoenix, for appellee Inspiration Consolidated Copper Co.

Farringer & Raftery by Leland C. Makemson, Phoenix, for appellee Magma-Superior Copper Co.

HAYS, Chief Justice.

Appellants bring suit against six alleged owners or operators of copper smelters in Arizona and claim to represent a class consisting of all "persons living in Maricopa County who have occasion to and in fact do breathe and visualize air polluted by defendants." This class is specifically described in appellants' motion for determination as "[that area] bounded by the Superstition Mountains on the east; the White Tank Mountains on the west; the McDowell Mountains on the north; and the South Mountains on the south. The class of people represented by the plaintiffs herein reside within the aforedescribed area and number approximately 700,000 persons." Reader seeks compensatory and punitive damages for allegedly intentionally (first claim) and negligently (second claim) discharging pollutants into the air which were transported to the Salt River Valley and which restrict visibility

and cause aesthetic injury to the environment. The third claim for relief seeks to enjoin the operation of devices which emit the toxic effluent to prevent continued irreparable injury to the ecology and to appellants' health, comfort and enjoyment of the environment.

Reader filed a motion in the trial court under Rule 23(a)(1) of the Rules of Civil Procedure, 16 A.R.S., for an order permitting the lawsuit to proceed as a class action. The trial court determined, without explanation, that the action could not be maintained as a class action and Reader appealed. The Court of Appeals dismissed the appeal on the ground that the trial court's order was interlocutory and not appealable. We vacated the order of the Court of Appeals without prejudice to either party, with directions to proceed in this court with the appeal on the merits, 108 Ariz. 186, 494 P.2d 708.

The sole question before us is whether the trial court erroneously dismissed appellants' suit as a class action.

Despite the large amount of background material and the history of the evolution and repeated amendments to Rule 23, at the time our opinion was being formulated nearly everything that need be known about the issue before us was contained in Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2 Cir. 1968) (hereinafter referred to as Eisen II). Unfortunately, as our labors and research were about to culminate in an opinion, the Eisen case was again appealed to the U.S. Court of Appeals, Second Circuit, and on May 1, 1973, it handed down a new opinion containing much new law. Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (hereinafter referred to as Eisen III). In our opinion, Eisen III effectively disposes of any previously existing possibility that the instant case could proceed as a class action.

We are well aware that at this juncture the United States Supreme Court has granted certiorari in the latest Eisen case.

We consider it appropriate, however, to proceed with our disposition of the case.

Eisen III made it clear that it had not reversed Eisen II but that since the remand of Eisen II, many facts had become clearer because of the hearings held in the district court, and five years of effort in that court had made it clear that the class was unmanageable.

In the instant case, we have concluded that this class is completely unmanageable because of the impossibility of distributing to the class without resorting to "fluid recovery," which has been stamped as improper by Eisen III. The instant case is even more difficult because of the vague and indefinite damage suffered, and the impossibility of the vast majority of the members of the class being able to put a value on their individual damages.

A review of the Eisen cases, plus a voluminous number of other class actions, illustrates the usual necessity for the trial court to apply the applicable standards and make appropriate findings of fact, as well as ultimate conclusions of law. *See, e. g.,* City of New York v. International Pipe & Ceramics Corp., 410 F.2d 295, 297 (2 Cir. 1969), Cusick v. N. V. Nederlandsche Combinatie Voor Chemische Industrie, 317 F.Supp. 1022–1023 (E.D.Pa.1970), Purdes v. Carvel Hall, Inc., 301 F.Supp. 1256, 1259 (S.D. Iowa 1969), Berman v. N. H. Jockey Club, Inc., 292 F.Supp. 993, 1000 (D.N.H. 1968), rev'd, 414 F.2d 311 (1 Cir. 1969), School District of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1001, 1004 (E.D.Pa.1967).

In some cases it is reasonable for the trial judge to make his findings on the basis of the pleadings alone. Chicago v. General Motors Corp., 332 F.Supp. 285, 291 (N.D.Ill.1971). In other circumstances, hearings and the production of evidence may be necessary. Eisen v. Carlisle & Jacquelin, *supra.* Illinois v. Harper & Row Publishers, Inc., 301 F.Supp. 484 (N.D.Ill.1969).

A careful examination of the facts and circumstances alleged in the pleadings indi-

cates that the requirements of Rule 23(a)(2)[1] are not met. There are not questions of law or fact common to the class; in fact, the class attempted to be established is so overbroad as to defeat the very definition of the word. The sheer number that plaintiffs try to embrace gives us pause. The differences in the place of residence, chronological age, length of residence, health and physical condition, economic and social interests of the seven hundred thousand proposed plaintiffs, coupled with the different locations, varying operations, diverse climatic conditions, and varying pollution propensities of the seven different smelter companies indicate everything but common questions of law and fact.

Since the case fails to meet the requirements of Rule 23(a)(2), it logically follows that neither does it comply with Rules 23(a)(3) and 23(a)(4).

This court is well aware that there is a need for viable class action relief within our judicial system. The overbreadth of the plaintiffs' action, however, compels us to affirm the action of the trial court.

Dismissal of plaintiff-appellants' suit as a class action affirmed.

HOLOHAN, J., and JACK L. OGG, Court of Appeals Judge, concur.

Note: Vice Chief Justice CAMERON did not participate in the determination of this matter. JACK L. OGG, Judge of the Court of Appeals, Division One, was called to sit in his stead.

STRUCKMEYER, Justice (dissenting).

It is my opinion that in rejecting plaintiffs' suit as appropriate for a class action the Court has thrown up almost insurmountable roadblocks to the prosecution of class actions in Arizona.

At the outset, I consider the findings and declarations of the Legislature of Arizona of significance to plaintiffs' suit.

"A. The legislature finds and declares that air pollution exists with varying degrees of severity within the state, such air pollution is potentially and in some cases actually dangerous to the health of the citizenry, often causes physical discomfort, injury to property and property values, discourages recreational and other uses of the state's resources and is esthetically unappealing." Air Pollution Control Act, A.R.S. § 36–1700, as amended.

Moreover, the Legislature specifically recognized that the courts have the power to suppress and abate air pollution and that other remedies as provided by the Legislature are in addition to and cumulative to those already existing in the courts.

"It is the purpose of this article to provide additional and cumulative remedies to prevent, abate, and control air pollution in the state. Nothing contained in this article shall be construed to abridge or alter rights of action or remedies in equity under the common law or statutory law, criminal or civil, nor shall any provisions of this article, or any act done by virtue thereof, be construed as estopping the state or any municipality, or owners of land from the exercise of their rights in equity or under the common law or statutory law to suppress nuisances or to abate pollution." A.R.S. § 36–1718.01. Added Laws 1971, Ch. 190, § 21.

Arizona's Civil Rule 23 was amended in July of 1966 to conform to the amendment to Rule 23 of the Federal Rules. Following the Federal pronouncements it should be liberally construed so as to provide a vehicle to vindicate those claims which if

---

1. 23(a) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

taken singly would be too small to justify legal action.

"As has previously been stated, one of the primary functions of the class suit is to provide 'a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group.' Escott v. Barchris Construction Corp., 340 F.2d 731, 733 (2d Cir. 1965), cert. denied Drexel & Co. v. Hall, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1966). * * * Indeed, we hold that the new rule should be given a liberal rather than a restrictive interpretation, * * * and that the dismissal *in limine* of a particular proceeding as not a proper class action is justified only by a clear showing to the effect and after a proper appraisal of all the factors enumerated on the face of the rule itself." *Eisen II,* supra, 391 F.2d at 563.

The trial court, in denying plaintiffs' motion to bring their action as a class action, did not make findings of fact or conclusions of law, nor did it in any manner indicate the reasons or grounds for its ruling. This Court is not informed as to the basis of the Superior Court's denial of plaintiffs' representation of 700,000 persons who stand to benefit if the claimed pollution is alleviated or in some fashion controlled through the interposition of a favorable judgment.

I am uncertain as to the significance of the majority's statement that the "sheer number the plaintiffs try to embrace gives us pause." Sheer size of a class is not negatively determinative of the issue of the superiority of a class action, *Eisen II* (391 F.2d 555). "The critical determinant is that of its manageability—judicially, administratively and practically—as a class action." Katz v. Carte Blanche Corp., 53 F.R.D. 539, 541 (D.C.Pa.1971). Sheer size legitimizes and vindicates the bringing of a representative action since otherwise there may be no means for resolving such disputes fairly and efficiently.

The majority hold, "There are not questions of law or fact common to the class; ". This seems to me absurd. Each of the allegations of plaintiffs' complaint are facts which, if proven, are common to all 700,000 people sought to be represented and all are necessary for a recovery. Among these are the allegations that each of the defendants discharges into the atmosphere gasses, aerosols and particulate matter which are transported into the Salt River Valley, and that such gasses, aerosols and particulate matter restrict visibility and damage the natural beauty of the environment in which the plaintiffs and all other members of the class live.

Proof of these allegations is the foundation upon which rests the defendants' ultimate liability and from them arise all the questions of law implied by the facts. For example, defendants state in their brief that the following defenses may be asserted: contributory negligence, assumption of risk, in pari delicto, prescriptive rights, coming to a nuisance, intervening negligence, estoppel, laches and the necessity of mitigating damages.

Rule 23(a)(2) requiring that common questions of law or fact be present does not require that all questions of law and fact raised by the dispute be common. Wright & Miller, Federal Practice and Procedure, § 1763. The differences pointed out by the majority in place and length of residence, age, health and physical condition, together with "economic and social interests" do not detract from the fact that questions common to all 700,000 must be determined in order to fix legal responsibility.

It is immaterial that certain of the class members are not identically situated. Washington v. Lee (D.C.Ala.1966), 263 F.Supp. 327, aff'd per curiam, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968).

"It is broadly implicit that a single determination by representative parties alone cannot in itself decide the claims or defenses of all class members; it is

assumed that individual questions peculiar to individual class members, but overweighted by the common questions, will or may remain after the common questions have been finally determined." Marvin E. Frankel, U.S. District Judge, S.D.N.Y., 43 F.R.D. 39.

*And see* Like v. Carter, 448 F.2d 798, 802 (8th Cir. 1971); Harris v. Palm Springs Alpine Estates, 329 F.2d 909 (9th Cir. 1964); Hicks v. Crown Zellerbach Corp. (D.C.La.1968), 49 F.R.D. 184.

The ultimate fact which must be established is that all of those in the class which plaintiffs seek to represent are damaged by defendants' conduct. The factual differences which the majority apprehend relate only to the question of damages.

Formerly, under the Federal Rules of Civil Procedure and our Rule 23(a)(3), plaintiffs were required to seek a "common relief". But in 1966, Rule 23 was revised so as to eliminate the element of common relief. The majority have now resurrected the former provision of the rule in order to strike down plaintiffs' suit as a class action.

"As a practical matter, a requirement of common relief has no compelling importance and its absence presents no insuperable difficulties. A determination of the interest of each member of the class in any damages recovered does not seem to us dissimilar to a determination of each member's interest in a common trust fund, such determination sometimes being required after the common issues have been resolved in a class action. Only at such final stage do the individual interests become critical and does the community of interest requirement lose significance. 'It is not unusual for class actions to involve such subsidiary questions wherein individual creditors or groups thereof contest issues among themselves after common questions as to basic liability have been settled. (See Chafee, Some Problems of Equity (1950), Representative Suits, pp. 209, 223; 71 Harv.L.Rev. 874, 938, fn. 465;

6 Stan.L.Rev. 120, 130.)' (Chance v. Superior Court, supra, 58 Cal.2d 275, 287, 23 Cal.Rptr. 761, 768, 373 P.2d 849, 856; see Bowles v. Superior Court (1955) 44 Cal.2d 574, 587–588, 283 P.2d 704.)" Daar v. Yellow Cab Company, 67 Cal.2d 695, 63 Cal.Rptr. 724, 734–735, 433 P.2d 732, 742 (1967).

Where damages have certainly resulted, mere uncertainty as to the amount will not preclude recovery. The uncertainty which precludes recovery of damages must be to the fact of damage and not to the amount. Maricopa County Municipal Water Conservation District No. 1 v. Roosevelt Irrigation District, 39 Ariz. 357, 6 P.2d 898 (1932); Jacobson v. Laurel Canyon Mining Co., 27 Ariz. 546, 234 P. 823 (1925); Jowdy v. Guerin, 10 Ariz.App. 205, 457 P. 2d 745 (1969). That damages cannot be calculated mathematically does not mean that there cannot be a recovery when it can be shown that plaintiffs have in fact suffered an injury. Grummel v. Hollenstein, 90 Ariz. 356, 367 P.2d 960 (1962).

Finally, I disagree with the majority's holding that "this class is completely unmanageable because of the impossibility of distributing to the class without resort to fluid recovery, which has been stamped as improper by Eisen III." *First,* because plaintiffs have not conceded, as did Eisen, that the action is unmanageable if fluid recovery is not permitted. *See Eisen III,* 479 F.2d at 1011. *Second,* because defendants, at least to this date, have not urged that this case is an improper vehicle for a fluid recovery. *Third,* because the majority's assumption that plaintiffs must resort to fluid recovery is simply a supposition on their part.

The meaning of the term "fluid class recovery" as used in *Eisen III* is that the court, having decided there is no conceivable way in which any substantial number of individual claimants can ever be paid, will substitute the class as a whole for the individual claimants, and gross damages to the class as a whole will then be assessed. *Eisen III,* 479 F.2d 1005. Presumably,

then, after the deduction of attorneys' fees and costs, the remainder will be distributed to some deserving charity or in some worthy manner as the trial judge finds attractive.

It has often been said that where there is a wrong, the courts will fashion an appropriate remedy. Here, no recourse to a fluid recovery need be had. Should the plaintiffs in the class action ultimately prevail, the trial court can fix the amount of damages suffered by each member of the alleged 700,000, or damages for each member of such subclasses as the court determines to be suitable assuming that all members of the class are not damaged in the same proportional amount. *See* Rule 23(c)(4). This can be done by a preliminary order. After allowing an adequate period of time for each of the members of the class to present themselves, there can be entered a final judgment in the total amount of attorneys' fees, costs and the sum of the damages of those establishing an identifiable interest. Distribution can then be had accordingly.

This brings me to what I consider to be the extreme vice of the majority opinion which can be stated in one short paragraph and which is equally applicable to both the question of common issues and fluid recovery.

Plaintiffs filed their complaint in three claims for relief—the first for intentionally polluting the air, the second for negligently polluting the air, and the third for an injunction enjoining the defendants from infusing into the air pollutant materials. Since the factual differences which the majority conjure relate only to the question of damages, they cannot possibly be grounds for a holding that the plaintiffs cannot maintain their third claim for injunctive relief as a class action.

LOCKWOOD, Justice (dissenting).

I concur in the dissent by Justice Struckmeyer.

The well-reasoned approach to the court's duty to determine whether any damage has been suffered by the 700,000 members of the public is consistent with the expressed view of the Legislature on the urgent question of air pollution.

It has long been recognized that each of the defendants has discharged into the atmosphere gasses, aerosols and particulate matter. That such discharge of gasses, aerosols and particulate matter has been transported into the Salt River Valley, with resultant restriction of visibility and damage to the natural beauty of the environment has long been maintained by various persons living in the Salt River Valley.

To say that they may not be joined in a class action would defeat the Legislative recognition of possible damage, as illustrated in the Air Pollution Control Act of 1967, A.R.S. § 36–1700, as amended.