**MIDWEST VIDEO CORPORATION, a corporation, et al., Plaintiffs,**

v.

**Honorable Jack M. CAMPBELL, Governor, et al., Defendants.**

Civ. No. 5931.

United States District Court
D. New Mexico.

Oct. 1, 1965.

Moses, McClellan, Arnold, Owen & Mc-Dermott, Little Rock, Ark., Lynell G. Skarda, Clovis, N. M., for plaintiffs.

Earl E. Hartley, Atty. Gen., Boston E. Witt and George Richard Schmitt, Asst. Attys. Gen., Santa Fe, N. M., Robert F. Pyatt, Special Asst. Atty. Gen., Hobbs, N. M., for defendants.

Before SETH, Circuit Judge, PAYNE, Chief Judge, and BRATTON, District Judge.

PER CURIAM.

This suit was brought to enjoin officers of the state of New Mexico from enforcing against the plaintiffs § 67–7–13(m) of New Mexico Statutes 1953 Annotated, on the grounds of its unconstitutionality. The Act in part prohibits "any person" from:

"Advertising by any means whatsoever the quotation of any prices or terms on eyeglasses, spectacles, lenses, frames or mountings, or which quotes discount to be offered on eyeglasses, spectacles, lenses, frames or mountings or which quotes 'moderate prices,' 'low prices,' 'lowest prices,' 'guaranteed glasses,' 'satisfaction guaranteed,' or words of similar import."[1]

The plaintiffs allege in their complaint that: "This action arises under the following provisions of the United States Constitution; (a) Commerce Clause, * * * (h) The Due Process Clause as to freedom of speech and press and deprivation of liberty or property of the Fourteenth Amendment and First and Fifth Amendments; (c) the Equal Protection of the Laws Clause under the Fourteenth Amendment; and Supremacy Clause of Article VI * * * ."

The plaintiffs are both corporations incorporated under the laws of the state of Arkansas, with their principal offices in Little Rock. Plaintiff, Midwest Video Corporation, owns and operates a community antenna television system in Clovis, New Mexico.

The plaintiff Midwest Video's Clovis CATV system primarily receives television signals from three FCC licensed stations in Amarillo, Texas, which is located approximately one hundred miles from Clovis. These regularly broadcast television signals are received at a microwave station located at Friona, Texas, owned by the plaintiff, Black Hills Video Corporation, and relayed by its microwave facilities to Midwest Video's 590-foot tower at Clovis. There the microwave signals are converted and simultaneously transmitted by cable to the some 5,600 television sets of Midwest Video's subscribers.

The state of Texas does not have a statute which prohibits "price advertising" of optometry services and supplies, and as a consequence all three of the Amarillo stations carried by the plaintiff Midwest Video's CATV system in Clovis broadcast "price advertisements" of various Amarillo optical firms.

---

1. The statute provides that a violation is a misdemeanor and the first offense penalty for "each act" is a fine of not less than $50.00 nor more than $200.00 or imprisonment in the county jail for not less than 30 days nor more than six months, or both.

On November 8, 1964, a representative of the New Mexico Attorney General's office wrote Midwest Video's manager at Clovis, advising him that if Midwest Video did not terminate dissemination of the "price advertising" of Amarillo optical firms in violation of the above-quoted New Mexico statute, "all necessary action to enforce the law will be taken." The plaintiffs thereupon commenced this action, challenging the New Mexico legislation as being in violation of the United States Constitution. In addition, the plaintiffs urge that they are not advertising.

Plaintiffs allege in their complaint that neither is advertising as such, nor in the advertising business, nor solicits or receives consideration from any advertisers using the Amarillo stations. They allege further that all they do is to transmit the signals from the Amarillo television stations without altering their content.

The allegations of damage are affidavits stating the plaintiffs' capital investments, number of employees, gross income, the hours of broadcast, the length of the optical company advertisements, and generally their method of operation. The affidavit further states that the plaintiffs are not in the advertising business, do not solicit advertising, receive no consideration for any advertising, and have no control over the advertising originating at the Amarillo television stations.

The defendants deny the allegations of plaintiffs asserting that they are not advertising, and in affirmative defenses assert that plaintiffs are violating the statute. The defendants also ask in a counterclaim that plaintiffs be enjoined from violating the statute and that the Act " * * * be upheld and declared constitutional and applicable to the particular business activities of plaintiffs * * * ."

The statute here in issue was considered in Head v. New Mexico Board of Examiners in Optometry, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983, which affirmed the decision of the Supreme Court of New Mexico in New Mexico Board of Examiners in Optometry v. Roberts, 70 N.M. 90, 370 P.2d 811. The United States Supreme Court held the statute valid under the commerce clause and the fourteenth amendment as it was applied in that case. However, it specifically declined to rule on the objection that the statute violates freedom of speech as protected by the fourteenth amendment, since this issue was not raised in the state courts. In the cited case, a Texas optometrist had placed advertisements, the wording of which would violate the statute, with New Mexico radio stations and a New Mexico newspaper. The Board of Examiners in Optometry instituted an action in the New Mexico District Court against the Texas optometrist and the other defendants under a New Mexico statute which permits any board to apply for injunctions to prevent violations of acts administered by such board. The District Court found that the action of the optometrist was in violation of the "price advertising" statute, and the other defendants were enjoined *from aiding and abetting in and encouraging him in violation of the statute.* Since the Texas optometrist was there not before the New Mexico District Court, no order was entered against him. The other defendants urged in their pleadings, both before the New Mexico District Court and the Supreme Court of New Mexico, that the price advertising statute could not be interpreted to apply to *their* actions in publishing or broadcasting the objectionable advertising. The question was however not decided as it was sufficient for the court to find that the defendants *aided* and *abetted* the Texas optometrist in violating the statute. The case, therefore, presents a factual picture quite distinct from the case at bar.

The New Mexico Attorney General's office has threatened the plaintiffs in the case at bar with "all necessary action to enforce the law." Whether this means a criminal action or an application for an injunction as in the Roberts case, or per-

haps both, is not indicated. The threatened action of the New Mexico Attorney General's office presents important questions of statutory interpretation of New Mexico statute. First, if it be assumed that criminal sanctions will be sought, it will be necessary to determine the question which was raised but not answered in the Roberts case, i.e., whether the plaintiffs fall within the statutory proscription against "any person * * * advertising." Second, if an injunction is sought as in the Roberts case against the plaintiffs to prohibit them from aiding and abetting in and encouraging violation of the New Mexico "price advertising" statute, it will first be necessary to determine whether there is any party whose actions are in violation of the statute. In the Roberts case, it was clearly a violation of the statute for a Texas optometrist to place advertisements with New Mexico publishing and broadcasting media. Therefore the defendants in that case were enjoined from aiding and abetting in such violation. That there is a violation of the statute in the case at bar, on the other hand, is not patent. Does it violate the New Mexico statute for Texas optical firms to place "price advertisements" with Amarillo television stations which do not themselves broadcast into New Mexico? Are the Amarillo television stations acting in violation of the New Mexico statute by broadcasting such advertisements which are relayed by microwave into New Mexico? Is the action of Black Hills Video Corporation in microwaving the signals containing objectionable advertising to Clovis in violation of the statute? This is not meant to be an exhaustive list of the existing questions of New Mexico statutory interpretation, but only an indication of the questions of local law which it will be necessary to answer.

The plaintiffs in their "Memorandum of Authorities" have a section entitled "Not advertising" wherein it is asserted that the statute is actually directed to those who are practicing optometry or attempting to. They also state that the statute is not directed to newspapers, radio or television, and "television does not fall into any category mentioned." They further state that if it applies to persons other than those practicing optometry, it is unconstitutional under the New Mexico Constitution because the title of the bill was defective. Also they assert that a "fair reading" of the statute shows it was never intended to apply to newspapers, radio or television. Also "advertising" as used in the act refers to "commercial" advertising, and they otherwise argue that the statute is not applicable to them if properly construed. The defendants argue that the statute is applicable to plaintiffs.

■ Where the application of a state statute is challenged on both federal constitutional and other grounds, a three-judge court is required, and it has jurisdiction over all the grounds of attack on the statute. See, e. g., Florida Lime & Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568. However, where the questions of state law may be dispositive of the case, the federal courts have often suspended further proceedings until the state law issue is disposed of in the state courts or the statute there construed. The application of the doctrine of abstention in a case similar to the one at bar is exemplified by Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. The plaintiffs there sought to enjoin orders of the commission as violative of the commerce clause and the fourteenth amendment. The court noted that the complaint stated a substantial constitutional issue which "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open." 312 U.S. at 498, 61 S.Ct. at 644. Since the federal constitutional issues presented could possibly be avoided by a definitive ruling on the state issues, Texas law must be considered first. However, the court observed:

" * * * [N]o matter how seasoned the judgment of the district

court may be, it cannot escape being a forecast rather than a determination. The last word on the meaning of Article 6445 of the Texas Civil Statutes * * * belongs * * * to the supreme court of Texas. In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication." 312 U.S. at 499–500, 61 S.Ct. at 645.

Therefore, in the interests of avoiding a tentative decision which might be overruled and in seeking to avoid friction between the state and federal judiciary, the Court remanded the case to the district court with directions to stay the proceedings until the Texas court could determine state law.

Abstention of the type ordered in Pullman has been ordered by the Supreme Court in many cases. The abstention doctrine is not an automatic rule to be applied whenever a federal court is faced with a doubtful issue of state law. It involves a discretionary exercise of the court's equity powers and should not be invoked except under special circumstances. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22; Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377; County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163. Generally, "special circumstances" have been found in the Pullman type of case where there exists a valid state issue, the determination of which might render moot the federal constitutional issue or at least present it in a different posture. See, e. g., Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152; City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562; Government and Civic Employees Organizing Comm. v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894; Railroad Comm'n of Texas v. Pullman Co., supra. Conversely, abstention will not be ordered where the relevant state statute is clear and unambiguous, nor where the statute is obviously unconstitutional, no matter how it could be construed by a state court. Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50; 33 U.S.L.Week 4354; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; Baggett v. Bullitt, supra; McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622; Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762; Harrison v. NAACP, supra; City of Chicago v. Atchison, T. & S. F. R. Co., 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174; Forty-Fourth General Assembly of Colo. v. Lucas, 379 U.S. 693, 85 S.Ct. 715, 13 L.Ed.2d 699.

Even in a case where abstention would ordinarily be applied, a showing that irreparable injury will result from the failure of the federal court to act promptly will make the case one not proper for the application of the Pullman doctrine. For example, in Dombrowski v. Pfister, supra, abstention was held improper where the complaint alleged that the statute in question violated the first and fourteenth amendment guarantees of expression and was void for vagueness on its face. There were also there allegations of threats to harass the appellants with arrests and threats of prosecution to discourage protected activities. Justice White who was with the majority in Dombrowski v. Pfister, supra, commented on its holding in a subsequent case by stating:

> "Dombrowski did not hold that the traditional equitable limitations on a federal court's power to enjoin imminent or pending criminal proceedings are relaxed whenever a statute is attacked as void on its face or as applied in violation of the First and Fourteenth Amendments. Rather that case makes clear that two particular kinds of challenges to state criminal statutes warrant extraordinary intervention in a State's criminal processes. They are planned prosecutorial misuse of a statute regulating freedom of expression and a vagueness attack on such a statute." Cameron v. Johnson, 381

U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715 (U.S. June 7, 1965).

It is apparent that from a study of Dombrowski and from Justice White's comments, the conditions there present which lead to the announced result do not exist in the case at bar.

The Supreme Court has also practiced a form of abstention in the cases of Aldrich v. Aldrich, 375 U.S. 249, 84 S.Ct. 305, 11 L.Ed.2d 304, a divorce case, and in Dresner v. City of Tallahassee, 375 U.S. 136, 84 S.Ct. 235, 11 L.Ed.2d 208, a civil rights case, by certifying questions of Florida law to the Supreme Court of Florida as permitted by the state rules. In Griffin v. County School Board, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256, the fact that the case had been delayed for over thirteen years by resistance at the state and county level, by legislation, and by lawsuits, was cited as a reason for not applying the abstention doctrine. The Supreme Court has declined to apply the abstention in other cases where peculiar circumstances were shown to exist, none of which are present in the case at bar. See, e. g., Baggett v. Bullitt, supra; McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622; Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492.

■ It is clearly established, however, that irreparable injury is not shown where it does not appear that the plaintiffs:

> " * * * have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford petitioners any protection which they could not secure by a prompt trial and appeal pursued to this Court." Douglas v. City of Jeannette, 319 U.S. 157, 164, 63 S.Ct. 877, 881, 87 L.Ed. 1324.

Such is the case at bar. We are present-
See also Dombrowski v. Pfister, supra.

ed with substantial federal constitutional issues. However, the necessity for the determination of these issues might very well be eliminated in a single proceeding in the state courts wherein the issues of statutory construction are litigated and there are no indications of irreparable injury if such course is followed.

■ Granted, abstention is especially desirable where the state has an expedited procedure available for the determination of such issues or where a state action is already in process. See, e. g., United Gas Pipe Line Co. v. Ideal Cement Co., 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623; Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058. However, unlike Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350, this action has not been long delayed and there is nothing to indicate abstention by this court would unnecessarily protract the litigation.

■ Therefore, consideration of the federal issues will be postponed and the cause stayed for a reasonable time (Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152; Doud v. Hodge, 350 U.S. 485, 79 S.Ct. 491, 100 L.Ed. 577), pending the determination of such proceedings as the parties may see fit to institute in the state courts to secure an interpretation of the New Mexico "price advertising" statute. The procedure and consequences outlined in England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440, are called to the attention of the parties. The plaintiffs may petition this court for further action in this cause at any time they deem it appropriate.

We hold that the state statute should be exposed to state construction as to its application to plaintiffs or limiting action before the federal courts are asked to pass on its constitutionality; therefore the Temporary Restraining Order heretofore issued is terminated this day, the proceedings are stayed, and jurisdiction is retained by this court.