The **PHILADELPHIA HOUSING AUTHORITY et al.,**

v.

**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al.**

**STATE OF KANSAS ex rel. Kent FRIZZELL, Attorney General**

v.

**AMERICAN–STANDARD, INC., et al.**

The **STATE OF CALIFORNIA et al.,**

v.

**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al.**

**Civ. A. Nos. 41773, 69–75, 68–2277.**

United States District Court
E. D. Pennsylvania.

Sept. 24, 1969.

See also D.C., 309 F.Supp. 1053.

Kenton C. Granger, Asst. Atty. Gen., State of Kansas, Mission, Kan., Gerald H. Genard, Deputy Atty. Gen. State of Cal., Los Angeles, Cal., for plaintiffs.

Fred A. Freund, New York City, for defendants.

## OPINION

JOHN W. LORD, Jr., Chief Judge.

Before the Court in two of the above-captioned cases are motions by plaintiff States to amend their complaints to allege a right to recover damages under the Clayton Act as "parens patriae" on behalf of individual consumers within these States. Wallace-Murray Corporation and certain other defendants have filed objections to these motions to amend.

Plaintiffs Kansas and California, as well as certain other plaintiffs, were granted leave to file briefs on this question. Though the problem is not before the Court in some cases at present, all parties have cited numerous cases to the Court in order to show that the type of wrong involved in this case is one for which States have been allowed to sue as "parens patriae" in the past. Defendants spend a substantial portion of their argument in an attempt to establish the contrary. The Court does not deem it necessary nor does it intend to discuss the bulk of these cases here. In essence, they are cases which dealt, as defendants point out, only with the propriety of suits "parens patriae" for *injunctive or other equitable relief*. With the exception of some of the few cases dealt with below, none of the cases cited by plaintiffs in their briefs dealt with the right of a state *to recover damages* in a "parens patriae" capacity.

The cases of State of Illinois v. Brunswick Corp., 32 F.R.D. 453 (N.D.Ill.1963) and State of Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D.Minn. 1968), cited by plaintiff California, did deal with the recovery of damages by States in treble damage antitrust suits. That factor about exhausts the similarity of the issues there involved to that in-

volved here, however. Those suits had nothing whatsoever to do with the ability of a State to recover damages on behalf of individual citizens as "parens patriae". In the *Illinois* case, Illinois was asserting, aside from its own claim for damages in its immediate proprietary capacity, claims on behalf of certain of its school districts which had authorized it to do so, and as representative plaintiff for a class under Rule 23 of all similarly situated school districts. It was pointed out that the overcharges to the school districts were paid with state-appropriated funds. There was no attempt to collect damages on behalf of individual citizens nor any attempt to assert claims as "parens patriae" as opposed to ordinary class action claims. In the *Minnesota* case, the state of Minnesota sought to represent as a Rule 23 plaintiff certain governmental agencies. This too was a Rule 23 class claim, not a "parens patriae" suit, and a suit to recover on behalf of the above-mentioned governmental agencies, not on behalf of individual citizens. The issue involved in that case was simply whether the State of Minnesota or the City of St. Paul was the more appropriate representative of the class of governmental entities. In making that decision, the Court took into account the argument of defendants that allowing the Attorney General to bring suit on behalf of lesser governmental entities, when coupled with the notice requirements of Rule 23, might result in the possibility of improper solicitation of claims. The Court said at pages 576–577:

"* * * In this situation, the best resolution seems to be with permitting the Attorneys General to assume this task and to speak for and represent the class members in court; provided that any member of the class may be separately represented if it wishes and/or may elect to, and will be permitted as above stated and within the times hereinafter limited, join the Third Division cases. The Attorneys General act in parens patriae, as it were, and have a responsibility to the various lesser governmental entities which the City of St. Paul, for instance, does not have. Further it would be expected that Attorneys General will not charge the prospective class members a percentage of any recovery made as a fee for their representation."

This is the only mention of "parens patriae" in the case and it is evident from the context that it represents merely a passing use of the phrase with no bearing on the issue now before this Court in the instant litigation.

Nor do these cases support the position urged upon the Court that, "the power of the attorney general to sue for the State in its parens patriae capacity is an issue to be determined by state law". It was necessary in those cases to determine *not only* that the attorneys general were so authorized, *but also* that a proper class action was asserted. Likewise, it would be necessary in a "parens patriae" suit, even where equitable relief alone is sought, assuming such authorization were established under state law, to show that the requirements of a proper "parens patriae" action were met *in addition*. While these cases might indicate that a determination of authorization under state law is a necessary condition of proper assertion of "parens patriae" claims, they certainly do not indicate that, even aside from questions of standing under Section 4 of the Clayton Act, it would be a sufficient one.[1] Certainly if an explicit State Statute specifically giving the state Attorney General the authority he is asserting is insufficient to establish proper assertion of "parens patriae" claims, and it has been so held in Land O'Lakes Cream-

[1]. That is to say, even if it were conceded that the cases establish that a State has standing to sue as parens patriae under Section 4 of the Clayton Act, the fact that an Attorney General has authority under state law to prosecute certain claims would not be sufficient to dispose of the question of whether a proper parens patriae claim were asserted in any given case.

eries, Inc. v. Louisiana State Board of Health, 160 F.Supp. 387 (E.D.La.1958), then general common law powers can not be sufficient. And in the instant case not just equitable relief but damages as well are sought, and the right to assert this type of claim requires further support.

Plaintiffs place principal reliance in support of their position that a State is entitled to recover damages on behalf of its individual citizens on the case of Georgia v. Pennsylvania Railroad, 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051 (1945) and the very recent decision of Chief Judge Martin Pence of the District Court of Hawaii which they have called to the Court's attention interpreting that case. State of Hawaii v. Standard Oil Co. of California et al., 301 F.Supp. 982 (D.Hawaii, Memorandum Opinion filed July 1, 1969). The *Georgia* case was the only case presented to Chief Judge Pence by either counsel or which was uncovered by that court after extensive briefing and research which could be argued to lend precedential support for a claim to recover treble damages in an antitrust action under a "parens patriae" claim. The same can be said of the cases presented to this Court after very extensive briefing (aside from Chief Judge Pence's decision itself).

In the *Georgia* case, *supra,* the State of Georgia sought to amend its complaint to bring, in the Supreme Court of the United States, an antitrust action against the defendant railroads, alleging that these railroads conspired to fix rates in such a way as to "prefer" the ports of other states over the ports of Georgia and to discriminate against Georgia, and to seek relief both in its proprietary capacity and in its capacity as "parens patriae". The Supreme Court pointed out that the dispute involved in the case was of the type ordinarily settled by the sovereign by diplomacy or war, and that original jurisdiction in the Supreme Court had been provided by the framers of the Constitution to allow the peaceful settlement of just such situations. The Court pointed out further that the wrong there alleged was one, which, if proven, would demonstrate a shackling of Georgia's industries, a retardation of Georgia's economic growth, and a relegation of the state of Georgia to an inferior economic position among her sister States. Georgia v. Pennsylvania Railroad, *supra* 324 U.S. at 450, 65 S.Ct. 716. The Court therefore concluded that the subject matter of the suit was of a type of grave public concern to Georgia's interest entirely above and apart from that of particular individuals within the state who might be affected. The Court therefore allowed Georgia to amend its complaint to assert the claims discussed above.

The Court ruled, however, that Georgia *would not be permitted to recover damages.* Several arguments had been made against the propriety of allowing a recovery of damages. One of these arguments rested on the prior case of Keogh v. Chicago & N. W. R. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922). In that case the Supreme Court had held that where rates fixed were found reasonable and nondiscriminatory by the Interstate Commerce Commission, no damages could be recovered under Section 7 of the Sherman Act by shippers even if a conspiracy to set the rates could be established. The theory of this decision was that if a shipper could recover damages under Section 7 of the Sherman Act for such a violation, on the basis that a higher rate resulted from the conspiracy than would otherwise have prevailed, then the amount recovered would operate like a rebate to give the recovering shipper a preference over his competitors and thereby defeat the purpose of Congress in preventing unjust discrimination. The Court in the *Georgia* case, *supra,* accepted this argument, and ruled that the *Keogh* case was sufficient in itself, even aside from any other argument against a damage recovery, to block the recovery of damages.

Plaintiffs take the position, however, that if it had not been for the *Keogh* decision, a case having no bearing on the instant one, the Court in *Georgia* would

have permitted the State of Georgia to recover damages and therefore claim that the case lends support to a claim to recover damages as "parens patriae". Plaintiffs rely on the recent decision in State of Hawaii v. Standard Oil Co. of California et al., 301 F.Supp. 982 (Memorandum Opinion filed July 1, 1959), which so interpreted the *Georgia* case. Defendants, on the other hand, claim that neither this case nor any other case lends such support to a prayer for damage recovery or in fact to one for any relief where the wrong alleged is asserted to have terminated.

It is not necessary, however, for the Court in the instant case to resolve this dispute. For even if this Court were to accept the interpretation placed on the *Georgia* case by plaintiffs and by Chief Judge Pence in the *Hawaii* case, and to determine in addition that the factual circumstances of this case, like those in the *Hawaii* case, established damage to the economy of the states as a whole, such a decision would not support the type of damage recovery sought by plaintiffs here. For in the instant case the plaintiff States are seeking to recover as "parens patriae" treble damage claims on behalf of individual consumers who are citizens of those states.[2] The decision in the *Hawaii* case, *supra*, to which plaintiffs call the Court's attention, can not possibly be construed to justify such a recovery. In the decision in that case, Chief Judge Pence very specifically stated:

"An analysis of the above cases indicates that if a state is to maintain an action in its *parens patriae* capacity, *initially* the facts must show that the state has an interest 'independent of and behind the titles of its citizens', Georgia v. Tennessee Copper Co., *supra*, [206 U.S. 230, 27 S.Ct. 618, 51

L.Ed. 1038] 'has an interest apart from that of the individuals affected', Pennsylvania v. West Virginia, *supra*, [262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117]; 'must show a direct interest of its own and not merely seek recovery for the benefit of individuals who are the real parties in interest', Oklahoma v. Cook, *supra*, [304 U.S. 387, 58 S.Ct. 954, 82 L.Ed. 1416]; '[it] must appear that the controversy to be determined is * * * not a controversy in the vindication of grievances of particular individuals', Louisiana v. Texas, *supra*, [176 U.S. 1, 20 S.Ct. 251, 44 L.Ed. 347]. *Thus the state's parens patriae claim cannot be a disguised attempt to recover damages on behalf of the state's individual citizen-claimants. It is not a substitute for a class action under Rule 23, Fed.R.Civ.P. The two theories for recovery of damages are separate and distinct.* (At this stage, we do not concern ourselves with the nature of proof.) *So, here, the State in the guise of parens patriae cannot recover for the individual and several possible damage claims of its many citizen-consumers of petroleum products.*" (Memorandum Opinion filed July 1, 1969, p. 986; emphasis added.)

And further at p. 988:

"There can be no risk of double recovery from the plaintiff for any single damage. As previously stated, a *parens patriae* action cannot be brought to recover the individual damages of the State's inhabitants. If the State cannot prove injury to the State's economy—an injury completely severable from the injuries to its individual inhabitants, then of course it could recover no money damages. * * *"

Nor does the *Georgia* case, *supra*, itself lend any support to the type of damage

---

2. See the opening paragraph of California's proposed amended complaint and Paragraph 2 of its prayer for damages in that complaint. See also p. 13 of California's Additional Memorandum in Support of its Motion for Leave to File Amended Complaint.

See Paragraph 4 of Kansas' proposed amended complaint. See also Paragraph (5) on p. 2 of Kansas' Brief in Support of its Motion for Leave to File Amended Complaint, pp. 2–8 of its Reply Brief, and pp. 1–2 of its Supplemental Reply Brief.

claim for which leave to amend is here sought. In fact, in the only "parens patriae" claim considered by the Court in its opinion, that set forth in Count 2 of Georgia's complaint,[3] Georgia did not even seek damages on behalf of individual citizens, nor for that matter treble damages under the antitrust laws at all, though it did seek treble damages in its proprietary capacity under Count 3 of its complaint. For in its prayer for relief set forth at pages 24–27 of its complaint, Georgia requested as damages under Count 2, that it be awarded "token" damages in the amount of five million dollars as a representative of the public as damages for harm and injury to the economy of the state as a whole.

■■ There is therefore no support in the authorities relied on by plaintiffs or elsewhere for the type of damage claim which plaintiffs here seek to assert by amendment. On the contrary, the *Hawaii* case cited by plaintiffs specifically denies the propriety of such claims by a state in a "parens patriae" capacity. Furthermore, suits for the benefit of particular individuals are precisely the ones which have been held not to present proper "parens patriae" claims, whether for damages or otherwise. Land O'Lakes Creameries v. Louisiana State Board of Health, 160 F.Supp. 387 (E.D.La.1958) and cases cited therein; State of Hawaii v. Standard Oil Co. of California, et al., 301 F.Supp. 982 (D.Hawaii, Memorandum Opinion filed July 1, 1969) and cases cited therein. In addition, as defendants point out, suits by a state to recover damages on behalf of individuals as "parens patriae" would present complex and difficult administrative problems. In particular, it would be very difficult to handle such suits so as to provide anything comparable to the notice and other safeguards or the binding effect on absent class members who fail to exclude themselves which the writers of the revised Federal Rule 23 were so careful to provide for ordinary class action suits. Similarly, there would be no assurance that the claim of the representing State (in its proprietary capacity, if any) or of any class member would be typical of the claims of all or most of the members, or that the common issues of law or fact predominate over those which affect individual members, as would ordinarily be required under Rule 23. It would seem to this Court that without at least these aspects of the requirements of Rule 23, manageability of extraordinarily complex litigation like the present cases would be eliminated. And of course it would be entirely unreasonable to expect this or any other Court in the context of the particular litigation before it to frame an entirely new structure of the detailed type set forth in Rule 23 for ordinary class actions, for the handling of "parens patriae" cases.

But plaintiffs contend that if this Court denies them the right to amend their complaints so as to assert claims to recover damages on behalf of individual citizen-consumers, those citizens with small stakes in this massive litigation will have no adequate remedy to vindicate their rights against defendants. They argue that to allow them to pursue the claims of individual citizen-consumers as "parens patriae" would be consistent with, rather than contrary to, New Hampshire v. Louisiana and New York v. Louisiana, 108 U.S. 76, 90–91, 2 S.Ct. 176, 27 L.Ed. 656 (1883) and other cases cited by defendants for the proposition that a State may not sue for its citizen when he can sue for himself. For they contend that the individual citizens cannot as a practical matter sue for themselves or get an adequate remedy in situations like those of the present cases.

The Court cannot accept plaintiffs' argument. In the 113 cases now before this Court for pretrial proceedings, there are numerous cases in which various plaintiffs claim the right to represent

---

3. The State of Georgia did seek treble damages as "parens patriae" on behalf of a limited class of its citizens in Count 4 of its Complaint. However the Court said at the outset of its opinion that it would only discuss Counts 2 and 3. Georgia v. Pennsylvania R. Co., *supra*, 324 U.S. at p. 443, 65 S.Ct. 716.

as classes under Rule 23 individual homeowners, owners of apartment houses, owners of commercial buildings and others at the consumer-level alleged to have sustained injury. Moreover, the plaintiffs involved here, the States of Kansas and California, in the very same proposed amended complaints in which they seek to recover damages as "parens patriae", assert claims on behalf of the same consumers as representative plaintiffs in ordinary Rule 23 class actions.[4] Rather than provide a remedy to small-stake consumers allegedly denied by reasons of practicality the opportunity to bring actions available to other class action plaintiffs, allowance of the proposed claims would simply permit circumvention of the restrictions to which other class action plaintiffs are subject. The real advantages which would result from allowance of such claims would accrue to the benefit of plaintiff States. These plaintiffs would be permitted to bring class action suits without being subject to the limitations of ordinary Rule 23 class actions, and in addition would be afforded protection against an adverse decision in the determination of the proper plaintiff to represent various individual consumers in the class actions in the case of conflicting claims to representation. But the writers of the revised Rule 23 weighed the problems of manageability, fairness, and judicial economy in establishing the requirements therein, and the Court agrees with defendants that to allow a plaintiff State to recover damages for individual claimants in a substitute type of representative suit without the safeguards there provided would undermine the aims of that Rule.

The Court concludes that the claims discussed above for which plaintiffs seek leave to amend are without legal foundation or policy support.

It is urged, however, on behalf of plaintiffs that consideration of the legal sufficiency of claims to recover damages as "parens patriae" is premature in the present posture of this case. It is argued that leave to amend must be allowed regardless of legal sufficiency so long as the amendment sought is not frivolous on its face, particularly in light of certain prior decisions in this district. See Riss & Co., Inc. v. Local 107 of Int. Brotherhood of Teamsters, 27 F.R.D. 7 (E.D.Pa.1961); Harvey v. Eimco Corp., 32 F.R.D. 598 (E.D.Pa. 1963); Gunnip v. Warner Co., 43 F.R.D. 365 (E.D.Pa.1968); Jenn-Air Products Co. v. Penn Ventilator, Inc., 283 F.Supp. 591 (E.D.Pa.1968). Plaintiffs argue that the amendment they seek, even if found to be legally insufficient, is not frivolous, and therefore contend that leave to amend must be allowed.

■ This Court cannot accept plaintiffs' argument, for several reasons. First, this case is not the ordinary one from the point of view of complexity, nor is the claim here involved the ordinary one from the point of view of the additional complexity it would introduce in these cases. Before the Court is extremely complex litigation, and this Court does not believe that it should be unduly and unnecessarily complicated further by claims without any legal foundation. While Rule 15(a), Fed.R.Civ.P., indicates that leave to amend should be granted freely where justice so requires, the judicial discretion invoked should not be without restraint, particularly in complex antitrust litigation where fair and orderly judicial policy is essential to the administration of justice. Gaylord Shops, Inc. v. South Hills Shoppers' City, Inc., 33 F.R.D. 303 (W.D.Pa.1963).

■ Secondly, this is not a situation of substantial amounts of conflicting legal authorities. As has been pointed out above, plaintiffs' claim to recover damages as "parens patriae" on behalf of individual citizens in an antitrust treble

---

4. See opening paragraph and Paragraph 7 of California's proposed amended complaint. See Paragraph 4 of Kansas' proposed amended complaint. All amendments sought by plaintiffs and included in these amended complaints with the exception of those asserting *parens patriae* claims were allowed by this Court in a prior order. (Order filed June 26, 1969, Paragraph 2.)

damage action under the Clayton Act is totally without legal support. Not a single case called to the attention of the Court has allowed such a recovery, and the cases discussing this type of claim have consistently denied its validity. This Court does not have before it a situation like that in *Gunnip, supra,* where legal authority directly in point supported the claim for which leave to amend was sought and no cases directly indicated that such a claim was improper. Nor is this a situation like that in the *Riss* case, *supra,* where attack on the right to amend was based on the fact that the defendants were pleading inconsistent defenses, a form of pleading explicitly sanctioned by Rule 8(e), Fed.R.Civ.P., or like that in the *Jenn-Air* case, *supra,* where attack on the right to amend was based on affirmative defenses involving factual information. Here it is not the effect of possible factual defenses which stands in the way of plaintiffs' claims, but their own complete lack of legal foundation. Where leave to amend is sought to assert claims devoid of legal foundation, it should be denied, particularly where as here, the statement of claims in the complaint is the stepping-off point for very far-reaching discovery. Stephens v. Reed, 121 F.2d 696 (3rd Cir. 1941); Eisenmann v. Gould-National Batteries, Inc., 169 F.Supp. 862 (E.D.Pa.1958); United States v. Two Lots of Ground, 30 F.R.D. 5 (E.D.Pa.1962); Gaylord Shops, Inc. v. South Hills Shoppers' City, Inc., 33 F.R.D. 303 (W.D.Pa.1963). While the line between mere legal insufficiency and "frivolity" is a rather hazy one at best, even *Gunnip, supra,* relied on by plaintiffs as establishing a "frivolity" test, clearly indicates that an amendment should not be allowed even under that test unless at a minimum it states a claim of sufficient substance that granting it would not be a useless act. *Gunnip, supra,* 43 F.R.D. at 367. This Court believes that the present amendment should be denied on that standard.

Third, the claim here involved presents an issue about which the Court had the benefit of extremely thorough and exten-

sive briefing, not only from those who are parties to the instant motions but from others who might conceivably be affected by a decision at a later point in the litigation. In the *Gunnip* case, *supra,* relied on by plaintiffs, it was pointed out that the "frivolity" standard there adopted was particularly appropriate where, as there, the legal issue involved had neither been briefed nor argued at all by the parties and where a motion for partial summary judgment would provide an opportunity for presentation of positions. 43 F.R.D. at 368. Here it is hard to imagine that such an opportunity would add anything of significance to the exhaustive arguments already presented.

For all of the foregoing reasons, plaintiffs' motions for leave to amend their complaints to assert a right to recover in damages the claims of their citizens as "parens patriae" must be denied.