**ASHLAND SAVINGS & LOAN ASSO-
CIATION, Plaintiff,**

v.

**AETNA INSURANCE COMPANY and
Insurance Company of North
America, Defendants.**

**No. 70 C 2095.**

United States District Court,
N. D. Illiniois, E. D.

Jan. 29, 1971.

---

George C. Rabens and Marvin Glassman, of Rabens, Formusa & Glassman, Chicago, Ill., for plaintiff.

John P. Gorman, of Clausen, Hirsh, Miller & Gorman, Chicago, Ill., for defendant Aetna.

Michel A. Coccia, of Baker & McKenzie, Chicago, Ill., for defendant INA.

## MEMORANDUM OPINION

Marovitz, District Judge.

Motions for Summary Judgment and Judgment on the Pleadings

This is a contract action alleging, alternatively, a breach of each defendant's contract of insurance with plaintiff. Jurisdiction is based on diversity of citizenship since plaintiff Ashland Savings & Loan Association (Ashland) is an Illinois corporation and defendants Aetna Insurance Company (Aetna) and Insurance Company of North America (INA) are corporations of Connecticut and Pennsylvania, respectively.

As amended and supplemented, the Complaint essentially alleges that INA insured Ashland against loss and damage by fire to a certain building and that Aetna insured Ashland against loss and damage resulting from the insured's failure to effectively cover the building with insurance. The Complaint further alleges that plaintiff suffered loss and damage as a result of a fire in the building and that one of the defendants is liable for damages.

Aetna has moved for summary judgment asserting that an applicable fire insurance of INA was in force at the time of the alleged loss. INA has also moved for summary judgment, asserting that its policy with plaintiff had expired before the alleged loss was incurred. Ashland has moved for a judgment on the pleadings, asserting that it is entitled to judgment as to liability against whichever company is found to have insured plaintiff's building at the time of the alleged incident.

The factual circumstances are not complex. During all relevant times, Ashland owned and operated an apartment building at 5054–58 N. Winthrop Ave., Chicago, Illinois. On or about October 21, 1966, Ashland and INA entered into an insurance contract, numbered AOP 6–07–80, which, among other things, provided protection against fire loss. Among the provisions in the contract were the following (at pp. 1, 5):

"This Policy covers from October 21, 1966 to until canceled noon, Standard Time, at Insured's Address."

\* \* \* \* \* \*

### CANCELLATION
of Policy

"This policy shall be canceled anytime at the request of the insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be canceled at any time by this company by giving to the insured a five-day's written notice

of cancellation with or without a tender of excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

On October 2, 1969, INA sent Ashland a notice of cancellation to be effective October 21, 1969. Subsequent to this notice, no premium was charged to or paid by Ashland.

Plaintiff had also entered into a contract of insurance with Aetna, effective February 1, 1967. This special multiperil policy, numbered MP 14 51 24, insured plaintiff against all direct loss and damage under an "Errors and Omissions Form," which, among other things, provided (at p. 3):

## SECTION II

"A. COVERAGE-MORTGAGEE INTEREST: * * * this company agrees to indemnify the insured for loss to the insured's mortgagee interest * * * in real property and in personal property mortgaged in connection therewith, when such loss occurs through error or accidental omission on the part of the insured (or those representing the insured) in the operation of the Insured's customary procedure in requiring, procuring and maintaining valid policies or other evidences of insurance against the perils described below, * * *

(2) on such property during and after foreclosure by the Insured or when sold under a conditional sales agreement or other instrument whereby title remains with the insured;

if, by reason of such error or accidental omission, requisite insurance is not in force at the time of the loss.

1. Perils: Only those perils against which the Insured customarily requires its mortgagors to provide policies of insurance to protect its mortgagee interest(s)."

Plaintiff's ownership of the subject property was the result of a foreclosure initiated by it.

A fire occurred in plaintiff's apartment building on November 30, 1969, resulting in damage to the building and its contents as well as loss of rent.

The basic question to be resolved is whether the INA or the Aetna policy, if either, was in effect at the time Ashland's building was damaged. INA suggests that its policy was cancelled by virtue of its written, mailed notification of October 2, 1969, which indicated the effective date of cancellation to be October 21, 1969. Aetna's position is that this notice was ineffective and invalid since INA failed to comply with certain state statutes, specifically Ill.Rev.Stat. Ch. 73, §§ 755.1a, 755.1b (1966). These laws provide:

"755.1a *Policies in effect for one year —Cancellations*

After a policy has been effective for one year, any company transacting fire and extended coverage insurance business shall not exercise its right to cancel any such policy of insurance except:

(a) For nonpayment of premium;

(b) When a policy was obtained by a misrepresentation or fraud; or

(c) For any act which measurably increases the risk originally accepted.

If membership in an organization is a condition precedent to the receipt of insurance coverage, failure to maintain such membership is reason to refuse to renew a policy."

"755.1b *Notice of cancellation—Time for giving—Proof of notice*

No notice of cancellation of a policy to which Section 143.1a (§ 755.1a) applies is effective unless mailed or delivered to the named insured at least 30 days prior to the effective date of cancellation. However, where cancellation is for non-payment of premium, at least 10 days' notice of cancellation

shall be mailed or delivered to the named insured. Proof of mailing of notice of cancellation to the named insured at the address shown in the policy, shall be sufficient proof of notice."

Aetna's claim is that INA failed to meet the time requirements for notice of cancellation and also failed to base its cancellation upon a proper statutory reason. Further, Aetna asserts that INA's attempted cancellation violated a February 19, 1969 order of the State Director of Insurance with respect to the timing of cancellation and giving notice of procedures for obtaining substitute insurance.

A determination of the viability of INA's policy at the time of the fire clearly involves a construction of the state insurance statutes cited by Aetna. While a minimum thirty-day notice provision was in effect long before the Ashland-INA contract was signed, Ill.Rev. Stat. Ch. 73, § 755.1b (1969), the requirement that insurance companies, after coverage has existed for one year, must state their reasons for cancellation became effective on September 22, 1969, or after the relevant contract was signed, but before cancellation was attempted. Consequently, the issue becomes whether, as Aetna suggests, the statute applies to all insurance contracts which existed at the time the statute became "effective," i.e., September 22, 1969, or, as INA suggests, the statute applies only to contracts signed after September 22, 1969, or, perhaps, although no party has suggested it, the statute applies to contracts signed before September 22, 1969, but only if they have been in effect for one year after that date.

Unlike the Illinois Commercial Code which specifically provided that it would become effective as to all "transactions entered into and events occurring after" a certain date, Ill.Rev.Stat. Ch. 26, § 10–101 (1969), the statutes with which we are concerned provide no such guideline. We do not know whether the Illinois legislature similarly intended Sec-

tions 755.1a, 755.1b to apply to contracts entered into after the "effective" date, but this time were silent, or whether they did not believe the community needed time to become acquainted with the provisions and/or intended, for reasons of public welfare, for the provisions to apply to existing contracts, or, indeed, whether they thought about this problem of applicability at all.

While most cases requiring statutory construction are resolved with an initial decision, if we were to construe the state legislature's silence as implying that the statutes were applicable to insurance contracts on September 22, 1969, and therefore to the Ashland-INA contract, we would be faced with the further problem concerning the constitutionality of such laws. That is, would the application of Sections 755.1a, 755.-1b be improper under U.S.Const. art. I, § 10 and Ill.Const. (of 1870) art. 2, § 14, S.H.A., both of which prohibit the state passing any "law impairing the obligation of contracts * * *"?

We are unaware of any decision by any Illinois court which concerns the construction of Sections 755.1a, 755.1b or which clearly set forth guidelines for those twi-light cases where a statute intervenes after a contract has been signed, but before the operating event occurs. Thus, we are asked to settle a virgin area of state law with potential federal constitutional overtones.

Although federal diversity jurisdiction has been properly invoked we find that abstention is proper in this case. We take this course since, in these special circumstances, state courts should be given the first opportunity to interpret state statutes, Reetz v. Bozanich, 397 U. S. 82, 85, 87, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 499–500, 61 S.Ct. 643, 85 L.Ed. 971; Wackenhut Corp. v. Aponte, 266 F.Supp. 401, 405 (D.P.R.1966), aff'd, 386 U.S. 268, 87 S. Ct. 1017, 18 L.Ed.2d 37 (1967), and since the state court's decision may make unnecessary a federal court's considera-

**86**

tion of a federal constitutional question, City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 640–641, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959); R.R. Comm'n. of Texas v. Pullman Co., *supra*, 312 U.S. at 501, 61 S.Ct. 643, 85 L.Ed. 971; Midwest Video Corp. v. Campbell, 250 F.Supp. 158, 162 (D.N.M.1965).

Although any use of the abstention doctrine will inevitably result in some delay of adjudication, this is not a case where a party's civil rights are in jeopardy, e.g., Zwickler v. Koota, 389 U.S. 241, 252, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Dombrowski v. Pfister, 380 U.S. 479, 486–487, 85 S.Ct. 1116, 14 L.Ed. 2d 22 (1965); Baggett v. Bullitt, 377 U.S. 360, 378, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), or where irreparable damage would result from delay, Midwest Video Corp. v. Campbell, 250 F.Supp. 158, 163 (D.N.M.1965). Rather, it is a case involving a state's regulation of a complex, vital industry, see Clay v. Sun Insurance Office Ltd., 363 U.S. 207, 211–12, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960); Life Insurance Co. of Virginia v. Shifflet, 370 F.2d 555, 556 (5th Cir. 1967); Duggins v. Hunt, 323 F.2d 746, 748 (10th Cir.1963); see also, Giorgi v. Pennsylvania Labor Relations Board, 293 F.Supp. 873, 875 (E.D.Pa.1968).

Therefore, in order to avoid a premature decision on a federal constitutional issue when the state courts might reduce or eliminate the problem, and in order to avoid unnecessary interference with a state's internal policy in an important area, Jehovah's Witnesses in State of Washington v. King County Hospital, 278 F.Supp. 488, 505 (W.D.Wash.1967); Schenley Industries, Inc., v. New Jersey Wine & Spirit Wholesalers Assoc., 272 F.Supp. 872, 882–883 (D.N.J.1967), we abstain. Since the ultimate disposition of all issues at the state court level would be appealable to the United States Supreme Court, there is no reason for this court to retain jurisdiction. Consequently, all pending motions for summary judgment or judgment on the pleadings are denied and the case is dismissed.