**CITY OF CHICAGO, an Illinois municipal corporation, individually and on behalf of all Illinois citizens who are residents of the City of Chicago, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, a Delaware corporation, et al., Defendants.**

**No. 70 C 1904.**

United States District Court,
N. D. Illinois, E. D.
June 25, 1971.

Richard L. Curry, Corp. Counsel, and Jerome H. Torshen, Sp. Asst. Corp. Council, Chicago, Ill., for plaintiff.

Hammond E. Chaffetz, Joseph Du-Coeur, George D. Newton, Jr., and James H. Schink, of Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for General Motors Corp.

Roger Barrett, Robert L. Stern and E. C. Heininger, of Mayer, Brown & Platt, Chicago, Ill., for Ford Motor Co.

Earl A. Jinkinson, of Winston, Strawn, Smith & Patterson, Chicago, Ill., for Chrysler Corp.

James O'Shaughnessy, and William T. Hart, of Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., for American Motors Corp. and Kaiser Jeep Corp.

Robert E. Haythorne and Joseph Du-Coeur of Kirkland, Ellis, Hodson, Chaf-

fetz & Masters, Chicago, Ill., for Checker Motor Corp.

Lawrence Gunnels of Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for Studebaker Corp.

John J. McHugh, of Chadwell, Keck, Kayser & Ruggles, Chicago, Ill., for White Motor Corp.

G. E. Hale and Paul S. Gerdling, of Wilson & McIlvaine, Chicago, Ill., for Mack Trucks, Inc.

## MEMORANDUM OPINION

### Defendants' Motion to Dismiss

MAROVITZ, District Judge.

This is, ostensibly, a class action products liability case. Plaintiff, City of Chicago (City), is an Illinois municipal corporation. City is bringing this action on its own behalf and on behalf of all Illinois citizens who are residents of the municipality. Defendants are nine out-of-state corporations, each of which is primarily engaged in the business of designing, developing, manufacturing and selling motor vehicles and related component parts and accessories. Jurisdiction is grounded in diversity of citizenship, 28 U.S.C. § 1332.

The Complaint charges that defendants' motor vehicles, which were knowingly intended for use in Chicago (Complaint, ¶¶ 8–9), "substantially contribute to air pollution within Chicago by their emission of dangerous contaminants, including, but not limited to carbon monoxide, hydrocarbons, oxides of nitrogen and particulate matter" (Complaint, ¶ 10), that in normal use they "create a hazard to the health and welfare of the residents and cause other injuries" (Complaint, ¶ 14), and that in normal use they are, consequently, unreasonably and inherently dangerous (Complaint, ¶¶ 15–16). Allegedly, the harmful emissions result from and refusal to install effective anti-pollution or emission control devices or to employ existing technology to alleviate the alleged danger. (Complaint, ¶ 16; Count II, ¶ 18. Although references have been made only to those paragraphs dealing with defendant General Motors Corporation, similar allegations have been lodged against each defendant.) Plaintiff seeks an order enjoining the sale of defendants' motor vehicles unless they are equipped with "tamper-proof emission control devices" which meet certain proposed standards, the furnishing, without charge, of control devices to any plaintiff purchaser of any motor vehicle of any defendant between 1960 and 1970, and other relief.

Defendants have moved to dismiss the class action under Rule 23(a), F.R.Civ. P., asserting that City is not a member of the class it purports to represent. Defendants have also moved to dismiss the Complaint for failure to properly allege the jurisdictional amount, because of the statute of limitations, because of laches, because of a failure to state a claim under products liability law or for improper design, and because the requested relief would be improper and inappropriate for the Court to grant.

■ With respect to the class action objection, we note that Rule 23(a) provides that:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if * * * (3) the claims * * * of the representative parties are typical of the claims * * * of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Essentially, this rule establishes adequacy of representation as a prerequisite to the bringing of a class action and requires that "the interest of the representative party must be coextensive with the interests of the other members of the class, and that there be a lack of adverse interests between the representative party and other members of the class." 3B Moore's Federal Practice, ¶ 23.06–2, at 23–325 (1969).

Now City alleges that it "is charged with the maintenance of city property and the protection of the health and wel-

fare of its residents," and that defendants' allegedly tortious conduct has injured City "in the maintenance of its property and the performance of its corporate functions of protecting the health and welfare of its citizens and has reduced the revenues of the city." (Complaint, ¶¶ 1, 20.) It seeks to represent "all Illinois citizens who are residents of Chicago," all of whose health and welfare has been endangered by defendants' activities. (Complaint, ¶¶ 2, 20.)

We do not believe that plaintiff City adequately represents the class it purports to represent. Although plaintiff and its class exist in a common atmospheric condition, we do not think this action could be said to be in the interests of all Chicago corporate and individual residents. There are many motor vehicle dealerships, repair and service stations, and gasoline outlets that would be adversely affected by some of the relief plaintiff seeks. Obviously, some unemployment would result if plaintiff successfully persuaded this Court to issue an order banning the sale of certain motor vehicles. At least these local residents and citizens have an interest adverse to that of City. Moreover, we doubt whether the plaintiff, charged with a community health problem, adequately represents those residents and citizens who are strongly attached to the motor vehicle as a recreational or luxury item and would not want their individual activities curtailed or made more expensive. In fact, given the great number of motor vehicles involved in the local air pollution problem, and the plaintiff's lack of control over them, we doubt that it can reasonably claim that all class members have "exercised due care in the operation and use" of defendants' vehicles. (Complaint, ¶ 21.)

Essentially, we think that the situation about which plaintiff complains is so complex that plaintiff cannot fairly be said to represent "all Illinois citizens who are residents of the City of Chicago." While our independent research has revealed a few cases in which one

governmental agency has been allowed to bring a class action on behalf of other such agencies, see, e. g., City of Philadelphia v. Emhart Corp., 50 F.R.D. 232 (E.D.Pa.1970); State of Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D.Minn.1968), we know of no case and plaintiff has suggested none that allows a municipality to bring a class action on behalf of all of its individual and corporate citizens. See Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 309 F.Supp. 1057, 1062–1063 (E.D.Pa.1969). Consequently, whether or not City is a member of the class it purports to represent, an issue on which we make no finding, we find that its interests are not co-extensive with nor representative of that gigantic and extraordinarily diverse class. The class action aspects of the Complaint are, therefore, dismissed.

We turn, then, to a consideration of defendants' contentions that plaintiff has not adequately alleged the requisite jurisdictional amount under 28 U.S.C. § 1332. Since the class aspects of the controversy have been eliminated, no discussion need be made of the value of the claims of the class members.

Plaintiff has alleged that the "amount in controversy is in excess of $10,000," the jurisdictional amount, and that it "has spent and will be required to spend large sums in the mitigation of the damaging effects of * * * exhaust emissions * * *." (Complaint, ¶¶ 6, 20.) We do not think that it is a legal certainty that plaintiff would not recover in excess of that $10,000 amount, if successful. In fact, we think that plaintiff's right not to be harmed by dangerous motor vehicle emissions and defendants' converse right to unfettered manufacturing are both in excess of that amount. *Compare* Biechele v. Norfolk & Western Railway Co., 309 F. Supp. 354, 355 (N.D.Ohio 1969). Since plaintiff's claim is in apparent good faith, and there is a probability of the value being in excess of the jurisdictional amount, the cause will not be dismissed for failure to adequately plead

that amount. Jeffries v. Silvercup Bakers, Inc., 434 F.2d 310, 311–312 (7th Cir. 1970).

■ The last two procedural points raised in defendants' motion to dismiss concerned the statute of limitations and laches. Neither of the points was discussed in defendants' arguments, and so we will give no consideration to either.

Finally, defendants moved to dismiss this cause because plaintiff failed to state a valid claim under products liability law and because relief would, for a variety of reasons, be improper and inappropriate. We turn now to the substance of plaintiff's claim and the propriety of evaluating it in this forum.

Plaintiff's claim is not grounded in a statute, but in the common law, the judicially manufactured law of products liability. Yet, it is clear that this is not an ordinary products liability case, that plaintiff's theory is by no means common and not yet law. In fact, plaintiff's cause, in theory and scope is unique.

■ In this jurisdiction, the law of which we are bound to follow in a diversity matter, the theory of products liability holds that a manufacturer must design and produce a product that is reasonably safe for its intended use. Beetler v. Sales Affiliates, Inc., 431 F.2d 651, 653 (7th Cir. 1970); Juenger v. Bucyrus-Erie Co., 286 F.Supp. 286, 288 (E.D.Ill. 1968); see Zahora v. Harnischfeger Corporation, 404 F.2d 172, 175–176 (7th Cir. 1968). The manufacturer is held strictly liable where plaintiff's injury results from an unreasonably dangerous defective condition in the product supplied by the manufacturer. Cunningham v. MacNeal Memorial Hospital, 47 Ill.2d 443, 457, 266 N.E.2d 897 (1970); Sweeney v. Max A. R. Matthews & Co., 46 Ill.2d 64, 69, 264 N.E.2d 170 (1970); Schmidt v. Archer Iron Works, Inc., 44 Ill.2d 401, 402, 256 N.E.2d 6 (1970).

The intended use of defendants' products, motor vehicles, is the transportation of people and things on streets and highways. Although Illinois courts apparently have not construed the extent of this concept, see Stammer v. General Motors Corp., 123 Ill.App.2d 316, 319, 259 N.E.2d 352 (1970), some courts have held that manufacturers must do more than provide a transportation platform and some have not. *Compare* Larsen v. General Motors Corp., 391 F.2d 495, 501–503 (8th Cir. 1968); Grundmanis v. British Motor Corp., 308 F. Supp. 303, 305–306 (E.D.Wis.1970); Dyson v. General Motors Corp., 298 F. Supp. 1064, 1073 (E.D.Pa.1969) *with* Schemel v. General Motors Corp., 384 F. 2d 802, 804–805 (7th Cir. 1967); Evans v. General Motors Corp., 359 F.2d 822, 824–825 (7th Cir. 1966).

However, even those courts which have extended the scope of an automobile manufacturer's duty have done so only in attempts to minimize the effect of vehicular accidents. While references were made to the environment in which motor vehicles were used, i. e., roads with many vehicles moving at fast speeds, social realism never extended beyond the highway to a problem not exclusively related to vehicular use, i. e., air pollution. *Larsen*, *Grunmanis* and *Dyson* were concerned specifically with a limited component of a particular automobile model, e. g., the steering shaft of the 1963 Corvair, the roof of the 1965 Buick Electra two-door hardtop, the gas tank of the 1962 MGB. By contrast, plaintiff is alleging that a defective condition exists in all models of all motor vehicles produced since 1960. Plaintiff is seeking relief for the damage allegedly done by no fewer than 1,000,000 motor vehicles in the Chicago area over the last decade.

In addition, plaintiff would have this Court assess liability not only for that damage done to the users of defendants' products, but also for that damage to bystanders as well, While other courts have to one degree or another permitted bystanders to recover from a manufacturer, Sills v. Massey-Ferguson, Inc., 296 F.Supp. 776, 780–781 (N.D.Ind. 1969); Caruth v. Mariani, 11 Ariz.App.

188, 463 P.2d 83, 84–85 (Ariz.Ct.App. 1970); Darryl v. Ford Motor Co., 440 S.W.2d 630, 633 (Tex.1969), again Illinois courts have not to the best of our knowledge.

Thus, plaintiff would have us anticipate the direction of the Illinois judiciary with respect to two delicate areas of products liability law: the extent of a motor vehicle manufacturer's duty to produce a reasonably safe product and the right of a bystander to recovery. Moreover, plaintiff would have us apply the newly anticipated guidelines to a situation which no court, in or out of this jurisdiction, has contemplated, i. e., metropolitan vehicular air pollution.

■ In situations that have warranted it, this Court has abstained from settling virgin areas of state law, deferring rather to the state courts. See, e. g., Ashland Savings & Loan Ass'n v. Aetna Ins. Co., 322 F.Supp. 82, 85–86 (N.D.Ill. 1971). See also, Ohio v. Wyandotte Chemicals Corp., 401 U.S. 493, 91 S.Ct. 1005, 28 L.Ed.2d 256 (1971). For this and other reasons explained below, we have concluded that this Court should not exercise its jurisdiction over this matter.

■ The reluctance to adjudicate this matter arises only in part from our belief that the common law of a state should be developed primarily by the local courts of that state. Of greater significance is the thrust of recently enacted federal legislation which essentially pre-empts the motor vehicle pollution field.

Under the Air Quality Act of 1967, 42 U.S.C. § 1857 et seq., and, more specifically, the National Emissions Standards Act, 42 U.S.C. §§ 1857f–1 et seq., regulation of emissions standards for new motor vehicles is lodged with the Department of Health, Education and Welfare of the federal government. The statute provides:

"No State of any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from any new motor vehicles * * * subject to this subchapter. No State shall require certification, inspection, or any other approval relating to the control of emissions from any new vehicle * * * as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle * * *." 42 U.S.C. § 1857f–6a(a).

Applicable state and local legislation was superseded in this direct fashion "in order to prevent a chaotic situation from developing in interstate commerce in new motor vehicles" and "(r)ather than leav(ing) this question (of pre-emption) to the uncertainties involved in litigation * * *." H.R.Rep.No.728, 90th Cong., 1st Sess.1956 (1967) [U.S.Code Cong. & Admin.News, 90th Cong. 1st Sess. (1967), at p. 1956].

Motor vehicle emissions have been regulated to some extent under this section, beginning with the 1968 model year. See generally, 45 C.F.R. § 85 (1970). Stricter standards and control have been imposed through new regulations and the Clean Air Act of 1970, Pub.L. 91–604, which amended the National Emissions Standards Act, among other things. Apparently, in view of this existing legislation, plaintiff is willing to modify its prayer for relief with respect to new vehicles. (Brief of Plaintiff in Opposition, p. 24.) No amendment to the Complaint has been filed, however. In any event, with respect to new motor vehicles, we think any action by this Court would only upset a carefully laid plan by Congress to deal with an important aspect of interstate commerce and public health.

■ We note that plaintiff's modification does not seem to extend to those models covered under the 1967 legislation since plaintiff does not believe that the 1967 regulations were adequate or, at least, adequately supervised. Nevertheless, the Congressional prohibition of piecemeal action applies to this group of

vehicles, too, and we think it inappropriate to interfere with that mandate. We would also point out that while the most recent legislation provides for the institution of citizens suit to enforce the new emission standards, 42 U.S.C. § 1857h–2, prior legislation limited the bringing of actions to restrain violations of emission standards to the United States, 42 U.S.C. § 1857f–3. Consequently, we will not entertain any action by this plaintiff with respect to motor vehicles covered by the 1967 federal legislation.

■ Of course, plaintiff has also sought relief for older models extending back to 1960. We are currently persuaded that judicial interference would not be appropriate for this aspect of the vehicular pollution problem either. Although the vehicles in question are not covered by recent federal legislation, the Chicago area has been designated an air quality control region, 42 U.S.C. § 1857c–2(a), 42 C.F.R. § 81.14, for which pollution standards and enforcement programs are being considered in a cooperative state and federal program. 42 U.S.C. § 1857d. Moreover, Illinois has recently enacted its own Environmental Control Act, Ill.Rev.Chap. 111½, §§ 1001 et seq. (1970 Supp.), part of which deals directly with air pollution, *id.* §§ 1008–10, in order to protect the environment. Under the Illinois legislation, a Pollution Control Board is to "define and implement" applicable environmental control standards, *id.* § 1005(b), including standards with respect to vehicular air pollution, *id.* §§ 1009(a), 1010(c, d), as part of a unified state plan dealing with different kinds of pollution, *id.* §§ 1002(a) (ii, iii), (b).

While the state and federal governments may not be moving as swiftly as plaintiff would like in this area, the fact remains that legislative and administrative guidelines and programs have been initiated. It would be improper for this Court to exercise its equitable jurisdiction to interfere with the comprehensive programs designed to solve a complex social, economic and technological problem. Quite simply, we choose not to pollute the scene with still more studies and standards.

Defendants' motion to dismiss is granted.